No. 9437.

## KOCHEL v. BARTLETT.

NEW TRIAL.—*Newly Discovered Evidence.*—*Diligence.*— In support of a motion for a new trial for newly discovered evidence, it appeared by affidavit that the new witness was a boy of fifteen, of whom enquiry had been made before the trial, to which he answered that he knew nothing about the cause, believing that what he did know had no bearing thereon. *Held*, that proper diligence was shown.

SAME.—*Cumulative Evidence.*—*Seduction.*—*Marriage.*—*Breach of Promise.*—In a suit for seduction under promise of marriage, the plaintiff testified to the principal facts, and also that, after the promise, the marriage was

postponed until spring; also, to subsequent conversations concerning the marriage, and to conversations after the seduction.

*Held*, that newly discovered evidence of subsequent conversations between the parties like those to which the plaintiff had testified was not cumulative, and was sufficient to warrant a new trial.

From the Warren Circuit Court.

*J. McCabe, C. M. McCabe* and *E. F. McCabe*, for appellant. *J. M. Rabb* and *M. Milford*, for appellee.

NIBLACK, J.—Action by Harriet Kochel, acting through her father and next friend, Henry Kochel, against David M. Bartlett, for seduction under promise of marriage. Answer in general denial; verdict for the defendant; motion for a new trial overruled, and judgment on the verdict.

It is only claimed that the court erred in refusing to grant the plaintiff a new trial. At the trial, which occurred at the January term, 1881, of the Warren Circuit Court, the plaintiff testified that she was an unmaried woman and then twenty years old; that about the middle of February, 1879, or perhaps a week earlier, she went to the defendant's house to work as a hired girl; that at the time the defendant's family consisted of himself, his mother and one John Kertman, a boy* living with him as a member of the family; that the defendant's mother died on the 22d day of that month; that afterwards, under an arrangement by which other company was kept nearly all the time in the house, she returned to work, and to keep house for the defendant, and in that way remained with him most of the time for about a year; that in June of that year mutual promises of marriage were made between her and the defendant; that it was first agreed that they should be married the next autumn, but that afterwards the time of their proposed marriage was extended until the following spring; that on Sunday, the 11th day of January, 1880, under assurances of an early marriage and complete protection, the defendant had sexual intercourse with her, from which she became pregnant; that a few weeks afterwards she made her condition known to the defendant, and requested a fulfilment

of his promise to marry her; that the defendant thereupon refused to marry her, when she soon thereafter left his house, no other sexual intercourse having taken place between them. The plaintiff also testified to several conversations with the defendant, on the alleged subject of their approaching marriage, during the summer and fall of 1879; also, to what was said at some interviews with him after their sexual intercourse, as well as after her condition of pregnancy became known.

The defendant, testifying in his own behalf, denied having ever promised to marry the plaintiff, and having ever had sexual intercourse with her; also denied all the conversations, promises and assurances sworn to by the plaintiff, and relied upon by her as tending to establish a cause of action against him. He asserted to the contrary that he had never made love to her in any way, or talked with her on the subject of marriage.

There was much conflict in the evidence as to many collateral and merely corroborating circumstances. One of the causes assigned for a new trial was newly discovered evidence. In support of that cause Henry Kochel filed his affidavit stating that, as the father and next friend of the plaintiff, he had from the first assumed the responsibility of searching out and procuring all the evidence possibly attainable for the plaintiff, she being physically unable to attend to that branch of her case; that before the trial he made diligent enquiry in every direction for all such evidence as might tend to sustain the plaintiff's cause of action, and especially did he enquire of the boy John Kertman, before the trial commenced, if he knew anything about this cause; that in answer to his, the affiant Kochel's, question, Kertman informed him that he did not; that he, the affiant, did not learn that Kertman knew the facts sworn to by him in his accompanying affidavit, also filed, until since the trial had closed.

The boy Kertman, referred to, stated in his affidavit that he was then over fifteen years old, and that he had lived a long time with the defendant; that in the latter part of

August, 1879, he overheard a conversation between the plaintiff and defendant one night in the latter's house, to the effect that the plaintiff wanted that they should get married that fall, to which the defendant responded that he did not wish to get married so soon after his mother's death; that he would prefer to wait till spring; that affiant was at the time in bed, and the parties acted as if they thought he was asleep; that some time about the first of February, 1880, he overheard another conversation between the parties, at the defendant's house, they acting as if they supposed no one heard them, to substantially the following effect on the part of the defendant: " We must not do what we have done any more.   If anything happens wrong to you we will get married and go out to Iowa this summer; " that a few days thereafter the affiant came up to where the parties were talking, and overheard them both saying something about getting married; that when they saw him the plaintiff went into the house; that he then asked the defendant if the plaintiff was not talking about going to Iowa with him, to which he answered that she was going to fix up some clothes, get ready and go out to Iowa with him, he to visit his uncle and she her uncle there; that he did not inform the plaintiff's father of the foregoing facts when the father enquired if he knew anything about this case, because he did not then know that such facts had any bearing upon it.

On behalf of the plaintiff, it is submitted with much apparent confidence, that, upon the showing thus made, a new trial ought to have been granted.   On the other side, it is urged that sufficient diligence was not shown, and that the newly discovered evidence was of a merely cumulative character, for the admission of which a new trial could not have been properly granted.

We are unable to infer any want of reasonable diligence on the part of the plaintiff.   Her father, and next friend, very properly made enquiry of young Kertman in due time as to his knowledge of any facts connected with the cause, and his mistake in answering as he did was not an unreasonable

one, considering his age and probable unfamiliarity with legal proceedings. At all events, the mistake was one for which the plaintiff ought not to be held responsible as bearing on the subject of diligence.

*Cumulative* evidence is said to be evidence of the same kind, to the same point. Thus, if a fact is attempted to be proved by the verbal admission of the adverse party, evidence of another verbal admission of the same fact is cumulative; but evidence of other circumstances, tending to establish the fact, is not. 1 Greenl. Ev., sec. 2.

In this case the facts which the testimony of the plaintiff was introduced to establish were the promise of marriage and seduction charged in the complaint. What she said, in reference to conversations with, and promises and assurances from, the defendant, were merely incidental to the substantial facts testified to by her, and were more in the nature of a part of the *res gestæ* than of admissions in the cause.

If the newly discovered evidence had been produced at the trial, it would have tended to prove the same substantial facts as those to which the testimony of all the other witnesses for the plaintiff was directed, but in a materially different way, and upon another trial it would presumably have the same tendency. It would be simply the introduction of "other circumstances, tending to establish" the alleged facts in issue between the parties, and hence not *cumulative* evidence within the definition given as above. *Parker* v. *Hardy*, 24 Pick. 246; *Humphreys* v. *Klick*, 49 Ind. 189; *Rains* v. *Ballow*, 54 Ind. 79.

If our estimate of the character of the newly discovered evidence be correct, the conclusion is inevitable that the court below erred in overruling the plaintiff's motion for a new trial.

The judgment is reversed, with costs, and the cause remanded for a new trial.

ELLIOTT, J., dissents on the ground that the newly discovered evidence was not of sufficient materiality to entitle the appellant to a new trial.