Filed Dec. 10, 1887.

———◆———

No. 12,935.

## ALLEN v. BOND, TRUSTEE.

NEW TRIAL.—*Newly Discovered Evidence.—Diligence.*—A new trial will not be granted on the ground of newly discovered evidence where, by the use of reasonable diligence, such evidence might have been obtained and used at the trial.

SAME.—*Facts Constituting Diligence Must be Set Out.*—Mere allegations of due diligence in endeavoring to obtain evidence in the first instance is not enough, but the facts constituting the diligence used must be stated, so the court may determine whether it was sufficient.

112 523
117 371
119 430

112 523
130 529

112 523
134 114

112 523
148 550

112 523
165 157

112 523
f171 102

Allen *v.* Bond, Trustee.

SAME.—*Absent Witness.*—*Efforts to Procure Testimony of.*—Where a party is denying the validity of a marriage alleged to have been performed by a named minister, in a certain city, at a specified time, and knows before the trial that the testimony of such minister is important, he can not, after the term, obtain a new trial on the ground of newly dis-covered evidence, unless he excludes negligence on his part in ascertaining the whereabouts of the minister, shows that he moved promptly to obtain his testimony, and that he could not, by the exercise of reasonable diligence, procure the same at the trial.

From the Vanderburgh Circuit Court.

*W. M. Blakey, W. S. Hurst, A. Gilchrist* and *C. A. De-Bruler,* for appellant.

*T. E. Garvin, G. A. Cunningham, A. Iglehart, J. E. Iglehart* and *E. Taylor,* for appellee.

NIBLACK, J.—On the 1st day of November, 1875, Francis D. Allen, of the city of Evansville, obtained a loan of seven thousand five hundred dollars from the Equitable Trust Company of New York, and to secure the payment of that sum, with semi-annual instalments of interest, he, on that day, executed to Jonathan Edwards, as trustee for that com-pany, a mortgage on a tract of land in Vanderburgh county. Edwards afterwards died and Henry R. Bond became his successor in the trust.

At the time of the execution of the mortgage, Allen claimed to be, and was generally reputed and understood to be, an unmarried man. Allen having made default in some of the conditions of the mortgage, Bond, on the 5th day of December, 1883, commenced proceedings in foreclosure against him in the Vanderburgh Circuit Court; also, mak-ing certain corporations and other persons defendants to an-swer as to any interest they might respectively claim to have in the mortgaged lands.

The complaint also charged that Mary E. Allen, the ap-pellant in this proceeding, and otherwise known as Mary Effinger, claimed to be the wife of the defendant, Francis D. Allen, and that, whatever the merits of her claim might

Allen v. Bond, Trustee.

then be, she was not his wife when he executed the mortgage then sought to be foreclosed. She was also made a defendant to answer as to her interest, if any, in the lands described in the mortgage. All the defendants, except the appellant and Francis D. Allen, made default.

The appellant answered that, early in the month of May, in the year 1875, she was united in marriage with her co-defendant, Francis D. Allen, in the city of St. Louis, in the State of Missouri; that she thereby became the lawful wife of her said co-defendant, which she had ever since continued to be, as she then was; that she was, consequently, the wife of the said Francis D. Allen at the time he executed the mortgage in suit, but did not join in the execution of that instrument; that, by virtue of her marital rights, she had an interest in the mortgaged lands, which she prayed might be protected. To this there was a reply in denial.

Issue being also joined between the plaintiff and Francis D. Allen, the court heard the evidence, and made a finding against the latter for a specified sum as due under the mortgage, and rendered a personal judgment and decree of foreclosure accordingly.

As between the plaintiff and Mrs. Allen, the finding and judgment were in her favor, and there was no finding or judgment against any of the other defendants. These final judgments were rendered on the 9th day of June, 1884.

Mrs. Allen was a witness in her own behalf at the trial of the cause. She stated that she had become acquainted with Francis D. Allen two or three years prior to 1875, having been first in his service in domestic employment; that, in the meantime, illicit relations between them had intervened; that, in consequence, she had, in March, 1875, commenced a prosecution against him; that soon after this he proposed that, if she would dismiss her prosecution, he would take her away to some suitable place and marry her privately, to which she consented; that accordingly she, at his request, accompanied him to the city of St. Louis early in May of

Allen v. Bond, Trustee.

that year, where they were married by a German minister of the gospel by the name of Roos at his residence, near a church; that the minister thereupon gave her a marriage certificate, which she brought home with her, and which she, three or four years later, showed to several persons, naming each of them; that this certificate had since been either lost or mislaid; that she and the said Francis D. Allen had ever since lived together as husband and wife, and still continued to do so, and that she had in the meantime borne to him several children.

The other persons named by Mrs. Allen, as above, testified that she had shown them a paper as stated by her; that they thought it contained the names of her and Francis D. Allen, and was partly in print and the rest in writing, with a fancy border around it, but none of them could repeat the substance of it, or recall the exact, if any, date, or remember by whom it was signed. Two of them, at least, indulged the impression that it had something to say about a marriage between the persons named in it, and all agreed that the reading of the paper had the effect of satisfying them that Mrs. Allen and Francis D. Allen had been at some time lawfully married.

Francis D. Allen was also a witness in the cause. He corroborated Mrs. Allen in every essential particular, and went more into detail as to the circumstances attending their marriage, and as to the precise place at which it occurred. He also stated that on account of his children by a former marriage, and the circumstances attending it, he desired that his marriage with his co-defendant should, as far as possible, be kept secret, and that it was so agreed between them; that he went to Missouri to be married because no license was there required; that at the time of the marriage, and for some time previously, as well as subsequently, he kept a hotel in the city of Evansville, and that his wife, then Mary Effinger, was in his employment as a hired woman, and resided on a farm, in the country, belonging to him; that for some

Allen v. Bond, Trustee.

time—perhaps two years thereafter—the same ostensible relations were continued, but that actual marital relations were, during that time, observed in their business and domestic affairs, and that since about 1877 or 1878 they had lived together as husband and wife under the same roof.

In regard to the cohabitation testified to, both Mrs. Allen and Francis D. Allen were corroborated by several persons living near to them.

In rebuttal it was shown that the defendants, who had thus testified, were not generally reputed to be husband and wife until some time after the year 1875, and that they did not hold themselves out as such for a considerable time after that year, and that there had always been some doubt as to the exact relations which had existed between them; that by a statute of the State of Missouri every minister celebrating marriages was required to keep a register of the persons united in marriage by him, and at, or within, stated times to report a list of the persons so united in marriage to the recorder of the proper county, to be by the latter recorded in his office.

The deposition of one Thiele, taken in St. Louis in March, 1884, after Mrs. Allen's answer was filed early that month, was also read in evidence in rebuttal. He deposed that he was a minister of the gospel and pastor of St. Peter's German Evangelical church at St. Louis; that in that position he was the successor of Ernest Roos, who had been pastor of that church from December 1st, 1870, until some time in 1880; that Roos had kept what purported to be a register of all the marriages celebrated by him during that period of time, which was then in his, Thiele's, possession; that the name of Francis D. Allen or that of Mary Effinger did not appear on that register, and that hence there was no mention there of a marriage between those persons. The witness submitted with his deposition a transcript of so much of that register as embraced the month of May, 1875, which did not have upon it either the name of Francis D. Allen or Mary Effinger. The same witness

described the house in which Roos lived during most, if not all, the time he was pastor of the church named. His description corresponded in a general way to that given by Mrs. Allen and Francis D. Allen of the house in which they claimed to have been married. Thiele further stated that, so far as he knew, Roos then resided in Switzerland.

One of the plaintiff's attorneys also testified to having visited St. Louis and examined the marriage record in the recorder's office of the county in which that city is situate for the year 1875, and for several years both previous and subsequent to that year, and to his failure to find there any record of a marriage between Mrs. Allen and Francis D. Allen, or any reference to either one of those persons.

On the 28th day of November, 1884, which was some time after the close of the term at which the proceedings herein above set forth had terminated, the appellee, Bond, filed the complaint now before us against Mrs. Allen for the purpose of obtaining a new trial as against her in the suit for a foreclosure of the mortgage, upon the ground of newly discovered evidence.

The complaint, after setting out at length the proceedings referred to as above, averred that, prior to the trial of the cause, the plaintiff diligently searched and inquired for evidence of the marriage alleged by Mrs. Allen in her answer; that to that end one of the plaintiff's attorneys went to the city of St. Louis and made diligent and careful search for Rev. Ernest Roos, the minister by whom Mrs. Allen and Francis D. Allen alleged they had been married; that such attorney succeeded in finding the place and church at which it was claimed the marriage ceremony had taken place, and also the record of marriages kept by said Roos at the time of the alleged marriage, but that he was unable to find Roos or to learn where he was, except that he was supposed to be in Switzerland, on the continent of Europe; that, at the time his said attorney went to St. Louis, the plaintiff was wholly ignorant as to what he could prove by Roos, or as to what

Allen v. Bond, Trustee.

Roos would testify to in relation to the alleged marriage; that, had he known what could be proven by Roos in the respect stated, his evidence could not have been obtained in time for the trial; that, after the close of the term at which the trial was had, that is to say, about the 15th day of September, 1884, the plaintiff discovered that he could prove by Roos that during the month of May, 1875, and for several years before as well as after that month, he was pastor of the church in St. Louis near which the alleged marriage between Mrs. Allen and Francis D. Allen was said to have occurred; that, during all the years of his pastorate, he kept a register of marriages in said church as the law of Missouri then required; that he kept such register with conscientious correctness by recording in it every marriage solemnized by him while connected with that church, including said month of May, 1875; that the transcript of such register for said month of May, submitted by Rev. Mr. Thiele, contained a full, true and complete list of all the marriages solemnized by him during that month; that no marriage ceremony between Francis D. Allen and Mary Effinger, to the best of his knowledge and recollection, was ever performed by him; that he never, at the request of the said Francis D. Allen, or in pursuance of any agreement or understanding, failed to enter any marriage solemnized by him in his register of marriages, and that a register of all the marriages in which he performed the marriage ceremony while pastor of the church in question was by him returned to the recorder of the proper county. The affidavit of Roos, swearing substantially as it was alleged he would, was filed with and accompanied the complaint.

After overruling a demurrer to the complaint, and upon issue joined and a hearing upon the matters charged, the court below set aside the finding and judgment made and entered as between the plaintiff and Mrs. Allen in the original

cause, and granted a new trial upon the issue formed between those parties at the former trial.

As appellant, Mrs. Allen assigns error only upon the over-- ruling of her demurrer to the complaint.

It is a familiar rule of practice, as applicable to all classes of cases, that a new trial will never be granted on account of newly discovered evidence where, by the use of reasonable diligence, the newly discovered evidence might have been obtained and used at the trial sought to be vacated. *Cook* v. *Hare*, 49 Ind. 268; *Bowman* v. *Clemmer*, 50 Ind. 10; *Nordman* v. *Stough,* 50 Ind. 280; *Carver* v. *Compton*, 51 Ind. 451; *Fort Wayne, etc., R. R. Co.* v. *Fhalor*, 51 Ind. 485; *Kochel* v. *Bartlett*, 88 Ind. 237; *Hines* v. *Driver*, 100 Ind. 315.

It is also a well established if not an equally familiar rule, that mere allegations of *due diligence* in endeavoring to obtain evidence in the first instance will not suffice.

The facts constituting the diligence used must be stated. The test is, what did the party do in his first effort to procure the evidence he claims to have discovered since the trial? When this is alleged, it then becomes a question for the court to determine whether due diligence was exercised.

As constituting diligence in this case, it is charged that one of the plaintiff's attorneys went to St. Louis and made diligent and careful search for Roos; that the attorney succeeded in finding the place and the church at which the marriage was claimed to have taken place; also, in finding the record of marriages kept by Roos at the time of the supposed marriage as indicated by Mrs. Allen's answer, but that he was unable to find Roos, or to ascertain where he was, except that he was supposed to be in Switzerland. The time at which the attorney so went to St. Louis is not given, but the evidence set out in the complaint, and which is thus made a part of that pleading, shows that one of the plaintiff's attorneys took the deposition of Thiele in that city on the 25th day of March, 1884, near two months and a half before the

cause was tried, and from the nature of that deposition the inference ought to be that the visit in question was made before that time. If nothing to that effect had already occurred, the information imparted by the deposition of Thiele was sufficient to put the plaintiff on his inquiry as to where and how Roos might be found. · The issue tendered by Mrs. Allen's answer was a sufficient indication as to Roos' probable importance as a witness; and this was very much strengthened by the discovery that his register of marriages contained no record of the marriage in controversy. Under such circumstances, ignorance of what Roos might know on the subject involved afforded no excuse for delay in an effort to ascertain what could be proven by him. The reasonable inference would seem to be, that, where a minister has had charge of a congregation for near ten years, he leaves many acquaintances, if not friends, behind him when he betakes himself to other fields of labor, and that inquiry of the members of his late congregation, or others of his acquaintances in the same locality, would supply the readiest means as to where he probably might thereafter be found. It is not stated that there was any difficulty in getting into communication with Roos after the trial, and nothing is shown indicating that he might not have been as easily communicated with before that event. If necessary, additional time would doubtless have been given within which to procure the testimony of a witness presumably so important.

Then, again, it is not averred that it was *first* discovered what Roos would testify to on or about the 15th day of September, 1884. It is the rule, in cases of this kind, that the party seeking relief must move promptly after the newly discovered evidence comes to his knowledge. *McDaniel* v. *Graves,* 12 Ind. 465.

For these reasons, the complaint does not, as we believe, exclude every conclusion of negligence on the part of the plaintiff, in his endeavor to obtain the testimony of Roos at the trial, to the extent that is required in an application for

Allen v. Bond, Trustee.

a new trial on account of newly discovered evidence, and particularly so in an application made after the close of the term. To authorize the granting of a new trial for newly discovered evidence, there must be a strong affirmative showing in support of the application. *Swift* v. *Wakeman*, 9 Ind. 552; *Hines* v. *Driver, supra.*

Having reached the conclusion that the complaint is defective in one material respect, it follows that the judgment below ought to be reversed without reference to other questions urged against the sufficiency of that pleading. But it is, perhaps, not inappropriate to remark that, with one exception, all the material matters proposed to be proven by Roos are of a merely cumulative character. That exception is that he, to the best of his knowledge and recollection, never united Mrs. Allen and Francis D. Allen in marriage, which involves an entirely negative proposition. As applicable to evidence, tending only to prove a negation, it must be borne in mind that generally a witness who testifies to an affirmative is entitled to credit. in preference to one who swears to a negative, because the latter may have forgotten what actually occurred, while it is impossible to remember what never had an existence. 1 Greenleaf Ev., section 74, and note; *Stitt* v. *Huidekopers*, 17 Wall. 384; Shearman & R. Neg., section 481.

Neither Mrs. Allen nor Francis D. Allen testified that Roos was either requested or that he agreed to keep their alleged marriage as a secret or from being registered.

The judgment is reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

Filed Dec. 20, 1887.