THOMAS SLATER v. UNITED STATES.

No. 605, Ind. T.   Opinion Filed October 16, 1908.

(98 Pac. 110.)

1. APPEAL AND ERROR—Review of Evidence Unnecessary. When an assignment of error, that the evidence does not support the verdict, is overruled, and the cause remanded upon errors of law, the court will not discuss the evidence.

2. NEW TRIAL—Newly Discovered Evidence—Affidavits—Sufficiency. In a motion for a new trial, upon the ground of newly discovered evidence, the affidavit of the defendant should set out the proposed evidence, and it must be such as could not have been secured at the former trial by reasonable diligence on the part of the defendant, and the diligence used must be stated in the affidavit. The affidavit of the witness should, if possible, accompany the motion.

3. WITNESSES—Credibility—Conviction of Crime. For the purpose of affecting the credibility of a witness he may be asked, on cross-examination, if he has been convicted of a felony or of any crime which involves a want of moral character; but it is improper to ask such witness if he has been indicted, arrested, or imprisoned, before conviction, for any offense whatever.

4. INSTRUCTIONS—Possession of Stolen Property—Presumption. It is error to instruct a jury that the possession of property recently stolen raises a presumption against the party having such possession, which requires an explanation from him; this being a charge upon the weight of the evidence.

5. TRIAL—Conduct of Court—Intimation of Opinion. It is improper for a trial judge, either directly or indirectly, to let the jury know, or even to intimate to them, what his opinion is as to the credibility of any witness testifying in a case before him.

(Syllabus by the Court.)

*Appeal from the United States Court for the Central District of the Indian Territory; T. C. Humphrey, Trial Judge.*

Thomas Slater was convicted, in the United States Court for the Central District of the Indian Territory, of larceny. An appeal was prosecuted to the United States Court of Appeals for the Indian Territory and transferred to the Supreme Court of Oklahoma under the enabling act (Act. June 16, 1906, c. 3335, 34 Stat. 267), and thereafter to the Criminal Court of Appeals. Reversed and remanded.

*J. G. Ralls,* for appellant.— On the question of whether, on cross-examination, a witness may be asked if he has been indicted or arrested: *Anderson v. State,* 34 Ark. 257; *Van Bokkelein v. Bardell,* 130 N. Y. 141. The presumption attaching to the possession of recently stolen property: *Denmark v. State,* 58 Ark. 576; *Shepard v. State,* 44 Ark. 39; *Boykin v. State,* 34 Ark. 443.

*T. B. Latham* and *W. C. Reeves,* Asst. Attorney General, for the United States. On the question of showing necessary to secure new trial on ground of newly discovered evidence; *Runnels v. State,* 28 Ark. 121; *Anderson v. State,* 41 Ark. 229; *White v. State,* 17 Ark. 404; *Bixby v. State,* 15 Ark. 398; *Hamlin v. State,* 48 Conn. 92; Whar. Cr. Pl. and Pr. Secs. 862, 866, 871. On the question of proper cross-examination in discrediting witness by asking if he had been charged with crime: *Hollingsworth v. State,* 53 Ark. 391; *Baker. v. State,* 58 Ark. 523; *Oxier v. United States,* 1 Ind. Ter. Rep. 93; *Burdett v. Com.* 93 Ky. 76; *State v. Taylor,* 118 Mo. 153; *State v. Ezzell* and *Ivey,* 41 Tex. 35; Whar. Cr. Ev., Secs. 432, 473, 474, 567, 991; Gillett on Indirect and Col. Ev., sec. 91.

FURMAN, PRESIDING JUDGE. Appellant was convicted on the 28th day of January, 1905, in the United States Court for the Central District of the Indian Territory, upon an indictment charging him with the larceny of a horse, and his punishment was assessed at imprisonment in the United States penitentiary for the period of six years. An appeal was prosecuted to the United States Court of Appeals for the Indian Territory, and was pending in that court when the state of Oklahoma was admitted into

the Union. Under the provisions of the enabling act (Act June 16th, 1906, c. 3335, 34 Stat. 267) and the Constitution of Oklahoma, this cause was then transferred to the Supreme Court of Oklahoma. Upon the creation of this court, the Supreme Court, as directed by statute, transferred this case to the Criminal Court of Appeals. The evidence for the prosecution is circumstantial.

First. Appellant assigns, as error, and complains of the action of the trial court in not sustaining his motion for a new trial, upon the ground that the testimony does not support the verdict against him. As this case will be remanded for a new trial on account of errors of law herein after pointed out, we do not care to discuss the testimony further than to state that we approve the action of the trial court upon this question.

Second. Appellant assigns, as error, and complains of the action of the trial court in not sustaining his motion for a new trial upon the ground of newly discovered evidence. Touching this matter, the motion for a new trial is as follows:

"Since the trial of this action, the defendant has discovered material evidence to his defense that he did not know of prior to the trial. That since said trial he has discovered that one Sim Jamison and J. J. Sparks, who lives near Oconee, Choctaw Nation, Indian Territory, and who is over 60 years of age, will testify taht about 2 o'clock in the night that the horse was stolen a man came to Sparks' and Jamison's riding the horse, which was a white horse or an iron gray horse that would be called white, and not branded, and stated to said Jamison and Sparks that he was lost, and asked to stay with him the balance of the night. Jamison let him stay the balance of the night, and that the man left Jamison's camp shortly after daylight and started in the direction of Oconee. That the horse the man was riding was the horse that had been stolen from Birchfield, and that the defendant was not the man that had the horse and was not with him. That the man that was riding the horse was a stranger to Sparks and Jamison, but that Sparks and Jamison will testify that if they would see the man again they would know him. Defendant says that this is material and new evidence, and that he believes the same to be true, and that he is not guilty of the crime."

The record does not contain any affidavit from the proposed witness, Sim Jamison. It contains an affidavit from J. J. Sparks, which is substantially the same as that of the appellant.

In *Runnels v. State,* 28 Ark. 121, it is said:

"Applications for new trials on the ground of newly discovered evidence are to be rceeived with caution, and this in proportion to the magnitude of the offense. The application should be corroborated by the affidavits of other persons than the accused, and, if possible, those of the newly discovered witnesses themselves, and it is not sufficient for the applicant to the state that he did not know of the existence of the testimony in time to have brought it forward on the trial; but it must appear that he could 13 Ark. 362; Graham & Waterman, New Trials, vol. 1, pp. 462, 485, and cases cited."

In *Twine, Saddler & Sawner v. Alice Kilgore,* 3 Okla. 643 39 Pac. 389, Judge Burford said:

"An application for a new trial on the ground of newly discovered evidence must show that the appellant used diligence to procure and present the evidence upon the trial, and the facts showing due diligence must be shown, so that the court may determine whether the diligence used was sufficient. *Allen v. Bond,* 112 Ind. 523, 14 N. E. 492; *Hamm v. Romine,* 98 Ind. 77. There is no showing in the case at bar that the defendant used any diligence whatever to procure the testimony upon which their motion for a new trial is based, nor is there any allegation to the effect that they had no knowledge of such evidence prior to the trial of said cause."

In *Flersheim Mercantile Co. v. Gillespie,* 14 Okla. 143, 77 Pac. 183, Judge Irwin said:

"The next asignment of error is that the court erred in refusing to grant to plaintiff a new trial on the ground of newly discovered evidence. It is a well-recognized rule of this court that a new trial on the ground of newly discovered evidence will not be sustained, unless it affirmatively appears from the affidavit in support of such motion that diligence has been used to discover such testimony, and that the same could not have been discovered at a time prior to the trial by the use of reasonable diligence. In the affidavit in support of the motion for a new trial in this case, the general statement is made that the plaintiff and its attorneys have used every possible effort to ascertain the names

of these witnesses, and the facts whereof they would testify; but it does not appear by the affidavit what these efforts were, or in what manner or how they investigated or made inquiry to ascertain the facts."

The above cases present our view of the law upon this question clearly and fully. In this case the affidavit is silent upon the question of diligence. It is therefore fatally defective, and the trial court did not err in refusing to grant a new trial upon this ground. An affidavit for a new trial upon the ground of newly discovered evidence must set out the proposed evidence, and it must be such as could not have been secured at the former trial by reasonable diligence on the part of the defendant, which fact should appear in the affidavit. If possible, it should be accompanied by the affidavit of the newly discovered witnesses.

Third. Appellant seeks to secure a reversal of the judgment in this case upon the ground that one of his witnesses, Tom Guinn, on cross-examination, was asked by the prosecution: "Have you ever been arrested?" To which the witness replied that he had. The prosecution then asked the witness what he had been arrested for. The witness replied that he had been arrested for stealing bois d'are posts, and also for disposing of mortgaged property. These questions were asked and answered over the objections and exceptions of counsel for appellant. Previous to being asked the above questions, the witness had stated that he had never been convicted of any crime.

Prior to statehood, the citizens of the United States living in what then was Indian Territory, had no form of government of their own outside of incorporated towns and cities. They were governed exclusively by the United States courts, under laws put in force in that country by acts of Congress. Chapter 46 of Mansfield's Digest of the Laws of Arkansas, entitled "Criminal Procedure," was put in force in Indian Territory by acts of Congress, both by Act May 2, 1890, c. 182, § 33, 26 Stat. 96, and by Act March 1, 1895, c. 145, § 4, 28 Stat. 695. By the former act the provisions of this chapter were qualified by the words, "as far as are applicable"; but, by the latter act named, there was no

qualification or exception whatever. Under the head of "General Rules for the Examination of Witnesses" (Indian Territory Statutes [Ann. St. 1899, § 2017; Mansf. Dig. § 2902]), we find the following:

"A witness may be impeached by the party against whom he is produced, by contradictory evidence, by showing that he has made statements different from his present testimony, or by evidence that his general reputation for truth or immorality renders him unworthy of belief, but not by evidence of particular wrongful acts, except that it may be shown, by the examination of a witness, or record of a judgment, that he has been convicted of felony."

When this provision of law was placed in force in Indian Territory, by act of Congress, it had repeatedly been construed by the Supreme Court of Arkansas, and had a clear and fixed meaning attached to it. The Supreme Court of Arkansas, in construing this statute, in the case of *Bates v. State,* 60 Ark. 451, 30 S. W. 890, says: "A witness cannot be impeached nor his testimony impaired by proving that he has been indicted for larceny" —and cites the following cases as showing that this is the settled rule in that state; *Holder v. State,* 58 Ark. 478, 25 S. W. 279; *Carr v. State,* 43 Ark. 99; *Anderson v. State,* 34 Ark. 257.

Section 2051 of the Code of Civil Procedure of California is as follows:

"A witness may be impeached by the party against whom he was called by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a felony."

In construing this section, in *People v. Chin Hane,* the Supreme Court of that state, on pages 606 and 607, 108 Cal., 41 Pac. 700, says: "In order to impeach the credibility of a witness, including a defendant, when he testifies, the witness may be asked if he has ever been convicted of a felony. * * * Beyond this the examination should not go."

The Supreme Court of New York, in the case of *Van Bok-*

*kelen v. Berdell,* 130 N. Y. 141, 29 N. E. 254, says: "Whilst a witness may be discredited by showing his conviction for an of-fense, we do not understand it to be competent to discredit him by showing that he had been indicted."

In the case of *Glover v. United States,* 147 Fed. 429, 77 C. C. A. 453, 454, the court says:

"* * * The prosecuting attorney inquired of several wit-nesses for the defense as to whether they had not been arrested at some time on some charge or other. Although the witnesses answered that they had been arrested for offenses, in instances they had not even been prosecuted, and where prosecuted they had been acquitted, the prosecuting attorney would follow this up, however, with a suggestive query: 'You have been arrested or accused several times?' It is competent for the purpose of dis-crediting a witness to show that he has been convicted of a crime. The general rule is that the crime must rise to the dignity of a felony or petit larceny. *State v. Taylor,* 98 Mo. 244, 11 S. W. 570; *State v. Kelsoe,* 76 Mo. 507; *State v. Donnelly,* 130 Mo. 651, 32 S. W. 1124; *Coble v. State,* 31 Ohio St. 100; *Glenn v Clore,* 42 Ind. 60. Whatever may be the limit in this respect, nothing short of a conviction of a crime is admissible for the purpose of impeachment. A mere accusation or indictment will not be ad-mitted for the reason that innocent men are often arrested charged with a criminal offense. 1 Greenleaf on Evidence (16th Ed.) 461b, 461c, pp. 579, 580. The proper evidence of a conviction of a crime is the record thereof. See *Baltimore & Ohio Railroad Company v. Rambo,* 59 Fed. 75-80, 8 C. C. A. 6; *Bise v. United States,* (recently decided by this court) 144 Fed. 374, 74 C. C. A. 1. The practice of proving the former conviction by cross-exam-ination is recognized in many states. usually by statute and oc-casionally by judicial decisions. 1 Greenleaf on Evidence (16th Ed.) par. 461b, note 8. But where this practice is recognized, the proper question would be as to whether or not the party being interrogated had been convicted of a crime, and not whether he had been arrested or indicted."

We might well rest our decision of this question upon the statute, and authorities above cited; but as counsel for appellee have, in their brief, discussed the general principles involved in this question, and as it is liable to be raised in the trial of many criminal cases, we deem it best to go into the matter fully, so that

the trial courts of the state may know what rule of practice will be adhered to by this court, whether the cases are subject to the statute above quoted or not, and thus avoid the reversal of cases in the future upon this question. We have not overlooked, or failed to consider, the cases which announce a doctrine contrary to the views expressed in the authorities above cited. In our judgment these cases are not founded upon justice, or supported by reason. It would be a useless consumption of time to take these cases up and discuss them in detail. Precedents should be weighed, and not counted. We will now proceed to give what we believe to be the fundamental principles which should control the introduction of this class of evidence. The sole purpose of its admission is to effect the credibility of a witness.. There are many crimes the commission of which conclusively proves an utter want of moral character, such as seduction, arson, forgery, perjury, larceny, obtaining money or goods by false pretenses, and similar offenses. They all necessarily impute disgrace and infamy. If a witness has been convicted of any of this class of offenses, it should be known to the jury, so that they may properly weigh his testimony, as indicating a tendency to deceit and falsehood. As witnesses are often called whose past lives are unknown to the party against whom their evidence is offered, it is proper that, on cross-examination, a witness may be asked if he has ever been convicted of a felony, or of any other offense which indicates a want of moral character. This may be done solely for the purpose of affecting the credibility of his testimony. Where it is sought to disqualify the witness and exclude his testimony, the record evidence of his convictions must be presented, if obtainable. To this extent there is practically no conflict in the authorities. The line of divergence begins with those cases which go further, and hold that a witness may be asked if he has ever been indicted, arrested, or imprisoned for crime. To this doctrine we cannot give our assent. It is manifestly unjust to expect that a witness can be prepared, without notice, to disprove every accusation of his enemies or alleged act of his life. Even if he could and was permitted to do so, it would require the intro-

·duction of testimony relating to collateral matters, and thus need-
'lessly occupy the time of the court, and confuse the real issues in
the case in the minds of the jurymen. But these reasons do not
apply to the query as to whether a witness has been convicted of a
felony, because the witness well knows if this is true, and because
the judgment is conclusive and cannot be attacked, and therefore
the witness could not use supporting testimony to prove his in-
nocence, even though he might have witnesses in the court for
that purpose.

An indictment is nothing more than an accusation of a crime.
An arrest is but the reassertion of this accusation. Imprisonment
before conviction is only the result of such accusation. They all
rest upon the same ground. Both by statutory provisions and by
the general principles of the law, every person accused of crime
is presumed to be innocent until his guilt is established · in a
court of competent jurisdiction, by legal evidence beyond a reason-·
able doubt. Accusations often rest upon hearsay and suspicion,
and are frequently prompted by malice. To allow a witness to be
asked if he has been indicted, arrested, or imprisoned for crime
before conviction is to place hearsay, suspicion, and malice upon
the same footing with, and to give them the same consideration,
dignity, and conclusive character as is attached to, the solemn
judgments of courts, rendered only after due notice and upon
full, fair, and impartial investigation. To this we cannot agree;
it matters not how many precedents may be cited to this effect.
A multiplicity of errors does not make right that which is pre-
dicated upon false premises, and which was therefore wrong in
its inception. To permit such questions to be asked is an act of
cruel injustice to a witness. It is out of harmony with the phil-
osophy of the law, and can serve no rightful purpose in the ad-
ministration of justice.

But it is· attempted to justify the admission of this class of
evidence upon the ground that it is always permissible to in-
quire into the antecedents of a witness, by showing his occupation,
social connections, manner of living, and such matters. While
we approve the principles referred to, we deny its application to

the class of evidence now under consideration. The presumption of law is that every person, to a large extent, has the right and power of selecting his occupation, social connections, and manner of living. Being matters largely of his own choice, they indicate his true character, and he is therefore responsible for them, and they may be inquired into for the purpose of affecting his credibility; but these reasons do not apply to indictments, arrests, or imprisonment before conviction, for the obvious reason that they are not matters of choice, but are involuntary, so far as the witness is concerned. When the reason for a rule of law ceases, the rule should fall with it. There is no rule of law that presumes guilt upon accusation, or on account of an arrest. Imprisonment before conviction is often evidence of poverty, rather than of criminality. A defendant of wealth can give bond, and, except in rare instances, does do so. The poor defendant is, in many cases, imprisoned, pending his trial. To say that such imprisonment raises a presumption of moral turpitude is illogical. It discriminates in favor of the rich and against the poor. It violates the fundamental principle of law that all classes, the rich and the poor, the influential and the humble, stand upon an equality before the courts.

For the reasons above given, we hold that upon cross-examination, for the purpose of affecting the credibility of the witness, he may be asked if he has been convicted of a felony, or of any crime which involves a want of moral character; but it is improper to ask such a witness if he has been indicted, arrested, or imprisoned, before conviction, for any offense whatever.

Fourth. Appellant assigns, as error, and complains of the following instruction given by the trial judge: "The possession of property recently stolen is a presumption against the party having possession, and it requires him to make explanation." Appellant duly execpted to the above instruction when it was given. The effect of this instruction is to inform the jury that the possession of property recently stolen raises a legal presumption of guilt against the party having it in his possession, and that the law requires an explanation from him of such possession. We

do not so understand the law. In the case of *Oxier v. United States*, 1 Ind. T. 91, 38 S. W. 332, Judge Lewis says:

"The later and the sounder and better rule is believed to be that which makes the presumption arising from the possession of recently stolen property not a presumption of law, but of fact; in other words, an inference to be drawn or not, as the jury may determine in the light of all the evidence."

In the case of *Blair v. Territory*, 15 Okla. 550, 82 Pac. 653, Judge Buford says:

"While the possession of stolen property does not create a presumption of guilt, it is a circumstance which, if not satisfactorily explained, raises a very strong inference of guilt. This inference, together with the facts and circumstances attending the taking and connected with the possession, are questions for the jury, and may be sufficient to induce an irresistible conclusion of guilt. The circumstances of each particular case must be of necessity different, and while possession of stolen property in one case may not warrant a verdict of guilty, there are other cases where such possession is so related to other circumstances of a criminating character as to satisfy an unprejudiced mind that the possessor is the thief. Proof of possession alone is not sufficient to sustain the conviction; but where the larceny is proven beyond question, the stolen property found in the possession of the prisoner, and he exercising acts of ownership and control over and claiming it, and the explanation given by him is not a reasonable or satisfactory one, and the conduct and character of the prisoner are such as to arouse suspicion, such facts and circumstances often produce the most satisfactory evidence of guilt and will sustain a conviction."

We regard this statement by Judge Burford as an admirable exposition of the law upon this question, and deem a further citation of authorities unnecessary. We therefore hold that any presumption of guilt which may arise from the possession of property recently stolen is not a question of law, but is purely a question of fact, to be found by the jury upon a consideration of the entire evidence before them. The instruction complained of was upon the weight of the evidence, which is for the determination of the jury, and was therefore error.

Fifth. Appellant assigns, as error, and complains of the fol-

lowing instruction given by the trial court: "If a witness were to go on the stand and swear that the moon was made of green cheese, you would not be compelled to believe that statement." Appellant reserved an exception to this instruction when given. It is a fundamental principle of the law that the jurors are the judges of the credibility of the witness. During any stage of the trial of a criminal case, it is improper for the judge to let the jury know, or even intimate, what his opinion is as to the credibility of any evidence before them. He should not do this either directly or indirectly; it matters not how absurd and incredible the evidence may appear to him. In this case the appellant offered testimony for the purpose of explaining his possession of the stolen property. This evidence does not commend itself to our minds as being credible, and in all probability it was viewed in the same light by the trial judge. The instruction given was calculated to create the impression upon the minds of the jurors that the court regarded the testimony of the defense as being as incredible as the supposed testimony, "that the moon was made of green cheese." In this there was error.

Reversed and Remanded. ·

BAKER and DOYLE, JUDGES, concur.