## GUY HARPER v. STATE.

No. A-1275.   Opinion Filed July 20, 1912.

(124 Pac. 1116.)

1. **NEW TRIAL—Discretion—Review.**   A motion for a new trial
   upon the ground of newly discovered evidence is addressed to
   the sound discretion of the trial court, and its ruling thereon
   will not be disturbed except for an abuse of this discretion; the
   presumption being that the discretion was properly exercised.

2. **SAME—Motion—Allegations as to Diligence.**   In a motion for a
   new trial upon the ground of newly discovered evidence, the dili-
   gence used in procuring testimony must be stated fully. It is not
   enough to merely allege that the defendant has used due dili-
   gence, but the facts constituting such diligence must be stated
   fully, so as to enable the court to determine whether or not prop-
   er diligence has been exercised.

3. **SAME.**   For a motion for a new trial upon the ground of newly
   discovered evidence which is fatally defective on the question of
   diligence, see opinion.

(Syllabus by the Court.)

*Appeal from Tulsa County Court;*
*N. J. Gubser, Judge.*

Guy Harper was convicted of a violation of the prohibitory
law, and appeals. Affirmed.

Upon the trial of this case J. J. Moran testified that in 1910 he was assistant chief of police of the city of Tulsa; that on the 5th of September, 1910, in company with Policeman Henry De Witt, between 8 and 9 o'clock at night, he saw two men enter the place of business of appellant. He then testified as follows:

"Q. What kind of a place is Harper's place? A. Drug store and booze joint. Q. Did you see the parties go in there? A. Yes, sir. Q. Who were the men? A. One gave the name of John Delaney. Q. What did he do? A. Stepped up to the counter on the south side of the room and spoke to Harper and he stepped back of the prescription case and handed him a package and he handed Harper money. Q. Do you know how much money it was? A. I couldn't tell. I was across the strret. I got the package just as soon as the man come out of the store. Q. What was the contents of that package? A. I have it. Q. Let me have it? (Bottle is produced.) Q. What is in that package? A. Mixture of alcohol. Q. Have you made a test of it? A. Yes, sir. Q. Does it stand the test of alcohol? A. It did; I burned some of it on the floor. Q. Does it require alcohol to burn? A. Yes, sir. Q. Does alcohol act as a beverage or drug? A. Yes, sir. Q. Was that in Tulsa county? A. Yes, sir. Q. Along about the 5th of Last September? De Witt was with you? A. Yes, sir. Q. This man gave his name as Delaney? A. Yes, sir."

On cross-examination said witness testified as follows:

"Q. You are certain that is the package you saw handed over? A. Yes, sir. Q. You are certain of that? A. Yes, I am, from the label that was on it. He had his hand on the bottle yet when I got him. He was working it down into his pocket when I saw him. Q. Did you say that will burn? A. Yes, pour it on the floor and it will burn. Q. The contents of that bottle? A. Yes, sir. Q. You have tried that have you? A. Yes, sir; Mr. Newblock and I tried it this morning. Q. He might have had that package when he went up there, didn't he? A. I don't think he had, because I saw Harper hand it to him. Q. Was it wrapped up? A. Yes, I don't know what did become of the paper, that label was put on after we came down here. * * * Q. What did this man say to you, did he tell you where he got it? A. Yes, he told me he got it in there. Didn't deny it, said he gave a quarter for it."

Henry De Witt, being sworn, testified on behalf of the state as follows:

"Q. What is your name? A. Henry De Witt. Q. Where do you live? A. Tulsa, Okla. Q. What business were you in on the 5th of last September? A. Police for the city of Tulsa. Q. Were you with Moran on the 5th of September, 1910, when at Guy Harper's place? A. I was. Q. Tell what you did. A. Me and Mr. Moran was down there on Second street about the opera house and we saw a couple of men go into a store, the Eureka House, and ask a fellow a question, and the fellow shook his head and they walked out and went up to the next store. Q. What is the name of the next drug store? A. Myers, I believe it is. Q. Did they get anything in the Eureka drug store? A. No, sir. Q. Did they get anything in the Myers drug store? A. No, sir. Q. Did you see them when they went into Harper's? A. Yes, sir. Q. What did they do? A. One stayed outside and the other went in, and the other fellow went in later. Q. Could you see Harper and the man in there? A. Yes, there was about three or four men in there. Harper was behind the counter. Q. What did Harper do? A. One of the fellows said something to him and he went to the rear of the building and come back and handed him a package and the man laid something down on the show-case. Q. Did the party put the package in his pocket? A. Yes, sir. Q. What pocket? A. His hip pocket. Q. Did you get anything out of his hip pocket? A. Moran did, I didn't. Q. Was that alcoholic mixture? A. Yes, sir."

On cross-examination said witness testified as follows:

"Q. Did you hear any of the conversation that was had at that time? A. In the store or outside? Q. Outside. A. Yes, I heard all of that conversation. Q. What was that conversation? A. Mr. Moran asked the fellow what he had and he said, 'Nothing.' Moran said just wait a minute, and I stopped one and he stopped the other and got this bottle, and he says, 'Where did you get this,' and he said, 'I got it in the drug store.' Q. How far away were you from Harper's store? A. I was just across the street standing on the curbstone, and Moran was standing down off the curbstone.. Q. Were you looking through the door or through the window? A. Through the window."

Appellant testified and positively denied the testimony given on the part of the state. Among other things appellant testified as follows:

"Q. State if you remember now what happened on that evening, if you know anything about the September 6th. A. To the best of my memory I have tried to remember, to the best of my memory this man Delaney come into my place and he asked

me for something but I don't know what it was, but he never
asked for alcohol and never got any alcohol. I don't think it
was — Seems to me he asked me for a match or some little
thing, ·I know whatever he asked me for I gave him; he didn't.
pay me for anything. He didn't have any money, at least he·
didn't show me any money. I think it was a match he asked
me for, I am not sure, but I know it wasn't alcohol. Q. Did,
you ever sell alcohol to anybody? A. No, sir. I would like to·
say a few words. I looked this man up and asked him about.
it and he said the officer took his alcohol away from him."

Appellant also testified that he had a government license·
to sell intoxicating liquors; that he got this government license·
on the advice of his attorney. Appellant also testified that he:
had been previously convicted in the county court of Tulsa.
county for violating the prohibitory liquor laws. After ap-
pellant had been convicted and judgment rendered against him,
he filed what is styled a motion for a new trial upon the ground!
of newly discovered evidence. The motion is as follows:

"In the County Court, Tulsa County, Oklahoma.
"State of Oklahoma, Plaintiff, v. Guy Harper, Defendant.

"Now comes the defendant in the above stated cause, in·
pursuance of an order heretofore made herein allowing defendant.
time in which to prepare and secure affidavit setting forth the·
newly discovered evidence herein on behalf of defendant in
support of his motion for a new trial, and presents hereto at-
tached, the joint and several affidavit of John Delaney and John·
Clara, as part hereof; setting forth the testimony they and each
of them will give at a new trial of defendant.

"Defendant would further show that he expects to have·
both of said ·witnesses present at the next term of the court, and·
that he had no knowledge that said witnesses could testify as·
is set forth in said affidavit, until after the trial and conviction·
of defendant herein, and that he could not with reasonable dili-
gence have discovered the existence of·said evidence before trial'
of said cause.

"J. R. CLARK, Attorney for Defendant.
"State of Oklahoma, County of Tulsa—ss.

"Before the subscribed personally appeared Guy Harper,.
who being duly sworn says, that he is the defendant named in·
the foregoing cause; that he has ·read the foregoing and that each
and every statement therein contained is true to the best of his.
knowledge and belief.                        GUY HARPER.

"Sworn and subscribed to this 25th day of April, 1911.

"G. W. Davis, Clerk.

"By E. L. Wess, Deputy.

"State of Oklahoma, Tulsa County—ss.

"Affidavit.

"State of Oklahoma v. Guy Harper.

"John Delaney and John Clara, first being duly sworn, upon their oaths, each for themselves, state that they are residents of the city of Tulsa, Oklahoma, and have been for about one year last past; that they are acquainted with the defendant, Guy Harper, and were so acquainted on the first Monday of September, 1910; that said affiants were in company with each other on said day; that on the evening of said day, about the hour of 8 or 9 o'clock p. m., they purchased from a colored man, whose name is unknown to them, one one-half pint of diluted alcohol for 25 cents, at the corner of First and Cincinnati streets in said city of Tulsa; that after they purchased said one-half pint of diluted alcohol, they went south on Cincinnati to Second street, thence west on Second street to the corner of Second and Boston streets in said city; that they then went south on said Boston street to the defendant Guy Harper's drug store; that John Delaney entered said drug store and called for some matches; that the defendant gave him the matches; that afterwards he left the store and started north on Boston avenue, and had gotten about 20 or 30 feet south of said store, when he was accosted by a couple of officers who searched them and found the said one-half pint of diluted alcohol; that said alcohol was not purchased at the drug store of said Guy Harper, and further affiants say that they did not on said day buy or get any liquor from said defendant Guy Harper, on that or any other day, and will so testify if given an opportunity.

"John Delaney.

"James Cleary.

"Subscribed and sworn to before me this 23rd day of February, 1911.

"[Seal.] Arthur Farmer, Notary Public.

"My commission expires May 28, 1912.

"Endorsed: In the County Court, No. 1687. State of Oklahoma, Plaintiff, v. Guy Harper, Defendant. Motion and affidavit for new trial. County Court, State of Oklahoma, County of Tulsa. Filed April 25, 1911.

"G. W. Davis, Clerk."

Judgment was rendered against the defendant on the 15th day of February, 1911.

*Clark & Fields,* for appellant.

*Smith C. Matson* and *E. G. Spilman,* Asst. Attys. Gen., for the State.

FURMAN, P. J. (after stating the facts as above). There are but two questions brought up for review by the petition in error and presented in the brief of counsel for appellant. The first is as to whether or not the motion for a new trial was filed in time; the second is as to the sufficiency of the motion upon the ground of newly discovered evidence. We will not discuss the first question because we think that on the merits this case should be affirmed on the ground that the motion for a new trial upon the ground of newly discovered evidence is altogether insufficient and fatally defective. Judgment in this case was rendered at the January term of the court. What purports to be a motion for a new trial was not filed until the March term of the court.

In the case of *Drew v. State,* 6 Okla. Cr. 348, 118 Pac. 677, Judge Doyle, speaking for this court, said:

"A motion for a new trial on the ground of newly discovered evidence, made before judgment, or after the term at which the defendant was convicted, is addressed to the sound discretion of the trial court, and its ruling thereon will not be disturbed, except for an abuse of discretion, the presumption being that the discretion was properly exercised."

In the case of *Johnson v. State,* 5 Okla. Cr. 4, 112 Pac. 761, this court said:

"The defendant filed a motion for a new trial upon the ground of newly discovered evidence, and claims that, if a new trial were granted him, he would be able to prove by Mollie Ingram and Lou Johnson that the prosecuting witness in this cause was over sixteen years of age at the time of the commission of this offense. Defendant alleges that since his arrest on the charge of this case he has been confined in jail and been unable to make any inquiries with reference to the testimony in the case; that he has used all reasonable diligence in procuring evidence in his behalf; and that he did not discover the testimony

of the said Lou Johnson and Mollie Ingram until after the con-
viction.  Defendant stated that he had exercised due diligence
in procuring testimony in his behalf before the trial began.  This
is merely the statement of a conclusion.  Such an affidavit should
state the facts, so as to enable the court to see that due diligence
had been exercised.  The record shows that the father of the
defendant resided at Woodville.  With the least effort on the
part of the defendant or his counsel, he should have been in
possession of the alleged facts set up in his motion for new
trial long before the trial of this case took place.'  The record
further shows that the verdict was rendered against the defend-
ant the same day on which the motion for new trial was filed.
No explanation was made as to how or why it was that the
defendant could discover this testimony as soon as he was con-
victed, but could not find it out before the trial.  Defendant had
had a preliminary trial at which the state's evidence was intro-
duced, and in which he was represented by the same counsel
who represented him in the final trial.  The town of Woodville is
about fifteen miles from the county seat where the trial took place.
It is not alleged that counsel for the defendant even visited Wood-
ville to make an investigation in behalf of their client; that the
defendant or his counsel ever even requested the father of the
defendant, who resided at Woodville, to make any investigation
as to the facts of the case.  They rested their defense entirely
upon the hope that the jury would believe the testimony of the
defendant rather than the testimony of the prosecuting witness.
Under these circumstances it was too late, after the conviction,
to begin to exercise that diligence which should have been ex-
ercised before the trial.  Counsel cannot remain idle before a
trial, and, after there has been a conviction, discover evidence
which they could have discovered prior to the trial by the exer-
cise of diligence, and thereby obtain a new trial.  The trial of a
criminal case is a very serious matter, and the law requires that
defendants and those representing them must be diligent in pre-
paring to defend their cases.  It is their duty to prepare their
cases for trial before a conviction has been had."

In the case of *Slater v. United States,* 1 Okla. Cr. 278, 98
Pac. 111, this court said:

"In *Runnels v. State,* 28 Ark. 121, it is said:  'Applications
for new trial on the ground of newly discovered evidence are
to be received with caution, and this in proportion to the magni-
tude of the offense.  The application should be corroborated by
the affidavits of other persons than the accused, and, if possible,

those of the newly discovered witnesses themselves, and it is not sufficient for the applicant to state that he did not know of the existence of the testimony in time to have brought it forward on the trial; but it must appear that he could not have ascertained it by reasonable diligence. *Pleasant v. State,* 13 Ark. 362; Graham & Waterman, New Trials, vol. 1, pp. 462, 485, and cases cited.' In *Twine, Saddler & Sawner v. Alice Kilgore,* 3 Okla. 643, 39 Pac. 389, Judge Burford said: 'An application for a new trial on the ground of newly discovered evidence must show that the appellant used diligence to procure and present the evidence upon the trial, and the facts showing due diligence must be shown, so that the court may determine whether the diligence used was sufficient. *Allen v. Bond,* 112 Ind. 523, 14 N. E. 492; *Hamm v. Romine,* 98 Ind. 77. There is no showing in the case at bar that the defendant used any diligence whatever to procure testimony upon which their motion for a new trial is based, nor is there any allegation to the effect that they had no knowledge of such evidence prior to the trial of said cause.' In *Flersheim Mercantile Co. v. Gillespie,* 14 Okla. 143, 77 Pac. 183, Judge Irwin said: 'The next assignment of error is that the court erred in refusing to grant plaintiff a new trial on the ground of newly discovered evidence. It is a well-recognized rule of this court that a new trial on the ground of newly discovered evidence will not be sustained, unless it affirmatively appears from the affidavit in support of such motion that diligence has been used to discover such testimony, and that the same could not have been discovered at a time prior to the trial by the use of reasonable diligence. In the affidavit in support of the motion for a new trial in this case, the general statement is made that the plaintiff and its attorneys have used every possible effort to ascertain the names of these witnesses, and the facts whereof they would testify; but it does not appear by the affidavit what these efforts were, or in what manner or how they investigated or made inquiry to ascertain the facts.' The above cases present our views of the law upon this question clearly and fully. In this case the affidavit is silent upon the question of diligence. It is therefore fatally defective, and the trial court did not err in refusing to grant a new trial upon this ground. An affidavit for a new trial upon the ground of newly discovered evidence must set out the proposed evidence, and it must be such as could not have been secured at the former trial by reasonable diligence on the part of the defendant, which fact should appear in the affidavit. If possible, it should be accompanied by the affidavit of the newly discovered witnesses."

Applying these rules to the case now before us, it is plainly apparent that the trial court did not abuse its discretion in overruling this motion. On the face of the record, the motion is fatally defective, as it appears affirmatively therefrom that the alleged evidence was not newly discovered. Upon the trial of this cause, appellant testified that he had looked up this man Delaney and asked him about it, and appellant then started to tell what Delaney said when he was interrupted by the court upon the objection that the testimony was hearsay. So appellant knew at the time of the trial what Delaney would swear and could have had him as a witness. Delaney lived at Tulsa and could easily have been obtained. His affidavit was obtained eight days after judgment was rendered against appellant. The information in this case was filed in the court on the 6th day of September, 1910, and appellant was immediately arrested thereafter. So appellant had five months' notice that the accusation against him was selling alcohol to Delaney. If he had exercised the least diligence, he could easily have had Delaney at the trial. There are other defects in the motion besides that of diligence, which we will not discuss. We have quoted fully from the law governing new trials upon the ground of newly discovered evidence, because many persons seem to think it is a light and trivial matter to be prosecuted in Oklahoma. This is a great mistake. The man who is careless about the preparation of his case for trial until after he is convicted will appeal to this court in vain for relief upon the ground of newly discovered evidence. If human evidence is worth anything, appellant is guilty of the offense of which he was convicted.

The judgment of the trial court is in all things affirmed, and mandate will issue at once.

ARMSTRONG and DOYLE, JJ., concur