**Ariel ALARCON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–86–207.

Court of Criminal Appeals of Oklahoma.

March 16, 1988.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., William S. Newberry, Jr., Legal Intern, Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Ariel Alarcon, was charged, tried, and convicted in the District Court of Tulsa County, in Case No. CRF–84–3486, for the crimes of Robbery With a Firearm (Counts I and II) and Shooting With Intent to Kill (Counts III and IV). Punishment was set at ten (10) years imprisonment for each count of Robbery With a Firearm, and thirty (30) years imprisonment for each count of Attempt to Kill, with the sentences to run consecutively. From these judgments and sentences, he appeals.

On September 8, 1984, the appellant was employed by A.L. Hoffman, owner of the Mingo Greenhouse in Tulsa, Oklahoma. That morning, the appellant accosted his employer and another employee, Tink Robbins, with a shotgun he had obtained from Hoffman's cooler. Hoffman kept the shotgun, loaded with blanks, at work to scare vandals. The appellant ordered Hoffman and Robbins, at gunpoint, to remove their wallets and go to the front desk of the greenhouse. He then made Hoffman write him a check for five hundred dollars ($500.00) and ordered the two to proceed to the rear of the greenhouse. During the walk, Hoffman heard the shotgun discharge which prompted him to run about fifty feet until the appellant told him to stop or he would shoot. The appellant marched Robbins and Hoffman to the rear of the greenhouse where he ordered Hoffman to stand in front of Robbins. Before Hoffman could comply with this order, the appellant fired the shotgun, wounding Hoffman and Robbins in the face. Although the gun was loaded with blanks,

both men were injured due to the close range at which the weapon was fired. Subsequently, Hoffman ran to the neighbor's house to call the police. Although he knew that the shotgun had been loaded with blanks, Hoffman had been fearful during the entire episode that the appellant had found some live ammunition and had reloaded the gun.

The appellant testified on his own behalf that he had worked at the greenhouse for only 30 days and had known the whereabouts of the shotgun since he had begun working there. He further stated that he had drunk a half-pint of gin before coming to work that day and had double-checked the shotgun before using it to make sure it was still loaded with blanks. The appellant also said that he fired the gun at the ceiling on purpose to make sure there were blanks in the gun. He claimed that he knew nothing about taking the wallets or the five-hundred dollar ($500.00) check from Hoffman, and denied ordering the men to go to the back room while holding them at gunpoint. The appellant further testified that the gun accidently discharged when his bandaged hand slipped, but later contended that he pulled the trigger as a joke, believing that the blanks would not hurt the two men. After the shooting, the appellant ran back to his house, failed to show up for work the following Monday, and was later apprehended by the police in Wisconsin.

In his first assignment of error, the appellant contends that the facts are insufficient to support his convictions for the two counts of Shooting with Intent to Kill in that there was no evidence that he had the requisite intent to kill because the shotgun was loaded with blanks. In determining if the State presented sufficient evidence to support a conviction, the relevant question is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985).

■ In the instant case, the gun had been in the greenhouse cooler for over four years without being fired. The appellant had only worked at the greenhouse for a month. The day of the shooting was the first and only time the appellant had ever handled a firearm of any kind. Furthermore, with the shells in the magazine, there was no way to determine whether the shells were live or blanks. The evidence was sufficient to find that under all the circumstances of the shooting, the appellant intended to kill Robbins and Hoffman. Moreover, even though there is a sharp conflict in the evidence from which different inferences may be drawn, it is the exclusive province of the jury to weigh the evidence and determine the facts. *Renfro v. State*, 607 P.2d 703 (Okl.Cr.1980). We therefore conclude that there was sufficient evidence from which the jury could find the appellant guilty beyond a reasonable doubt. This assignment is without merit.

■ In his second assignment of error, the appellant contends that the prosecution's persistent questioning concerning his prior arrests was improper because it implied to the jury that he had more contacts with law enforcement than his one prior conviction and prejudiced his right to a fair trial. At the outset, we note that the appellant is of Cuban descent and had difficulty in understanding the nature of the questions asked of him as well as answering them. This caused both defense counsel and the prosecution to ask leading questions and to repeat matters of importance for clarity. Due to this communication problem, the prosecution was forced to repeat questions, and the appellant was forced to repeat answers in order to make sure that the jury and the court could understand what the appellant was saying. Since the trial court properly sustained the appellant's objections and admonished the jury to disregard the alleged improper questioning, error, if any, was cured and will be regarded as harmless due to the overwhelming evidence of the appellant's guilt. *Willis v. State*, 650 P.2d 873 (Okl. Cr.1982). This assignment is groundless.

■ The appellant next contends that improper prosecutorial comments made during closing argument invoked societal

alarm and elicited sympathy from the jury which caused them to assess an excessive punishment. It is a well settled rule that any remarks alleged to have been improper must be shown to be so flagrant and prejudicial as to have actually inflamed the jury in finding against the defendant. *Sands v. State*, 542 P.2d 209 (Okl.Cr.1975). However, the comments made by the prosecution were well within the permissible bounds of argumentation and were drawn from reasonable inferences from the evidence shown. We cannot say that the comments were so grossly improper and unwarranted as to affect the appellant's rights that would require reversal. *Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980). Moreover, the sentences received do not exceed the statutory provisions, nor do they shock the conscience of this Court. *Clark v. State*, 678 P.2d 1191 (Okl.Cr.1984). This assignment is without merit.

The judgments and sentences are AFFIRMED.

PARKS, J., concurs.

BRETT, P.J., specially concurs.

BRETT, Presiding Judge: specially concurring.

Because of the evidence of guilt is strong in this case, I concur that the sentences should be affirmed. However, notwithstanding the fact that appellant had difficulty understanding the english language, because he is Cuban, the prosecutor should not have gone into the previous arrests of appellant. If communication was so difficult, the court should have provided an interpreter for appellant's testimony. This Court has long held that the procedure of inquiring into arrests is improper. In *Londo v. State*, 562 P.2d 1156 (Okl.Cr.1977), this Court stated:

> It has been the rule in Oklahoma since statehood that while it is permissible to question a witness about prior convictions for purposes of impeachment of credibility, it is never permissible to ask about mere charges or arrests. *See Slater v. United States*, 1 Okl.Cr. 275, 98 P. 110 (1908).

Therefore I concur that the sentences should be affirmed, but I would modify the sentences to require that they run concurrently with each other.