## CARL HOWEY v. STATE.

No. A-1393.   Opinion Filed May 31, 1913.

(132 Pac. 499.)

1.  APPEAL—Time for Perfecting Appeal. (a) Under the provision of section 6948, Comp. Laws 1909, Rev. Laws, 5991, an appeal from a judgment of conviction in a felony case must be taken within six months from the date judgment is rendered.

    (b) The appellate court is without jurisdiction to consider and determine questions raised at the trial when the appeal is not perfected within the time provided by the statute, which is six months from the date of judgment, and not six months from the date of passing on motions or making other orders.

    (c) There is no provision of law which vests discretion in the appellate court to hear and determine appeals when they are not taken within the time provided by the statute.

2.  SAME—Denial of New Trial. In certain cases and under certain conditions, and when taken in the proper manner, appeals will lie to this court from the action of a trial court in denying a motion for a new trial on the ground of newly discovered evidence when such motion is filed within the time and in the manner provided by the statute.

3.   NEW TRIAL—Grounds. A new trial should not be granted on
     the ground of newly discovered evidence unless there is a reas-
     onable probability that a jury would arrive at a different con-
     clusion when all of the evidence introduced at the former trial
     is considered with the new evidence discovered.

(Syllabus by the Court.)

*Error from District Court, Grady County;
Frank M. Bailey, Judge.*

Carl Howey was convicted of murder, and he brings er-
ror.   Affirmed.

*Thomas J. O'Neill,* for plaintiff in error.
*Smith C. Matson,* Asst. Atty. Gen., and *H. A. King,* Sp.
Asst. Atty. Gen., for the State.

ARMSTRONG, P. J.   The plaintiff in error, Carl Howey,
was convicted in the district court of Grady county at the
October, 1910, term, on a charge of murder.   On the 4th day
of November judgment was rendered against him fixing his
punishment at life imprisonment in the state penitentiary.

The petition in error and case-made was filed in this
court on the 16th day of September, 1911, and the Attorney
General has filed a motion to dismiss the appeal upon the fol-
lowing grounds:

"First. Because the record shows that this is an attempted
appeal from a judgment of conviction in a felony, to wit,
murder, rendered in the district court of Grady county on the
4th day of November, 1910; that no notices of appeal were
served on the county attorney and clerk of the district court
until the 21st day of June, 1911, more than six months after
the rendition of such judgment.   Second. Because said case-
made and petition in error was not filed in this court until
the 16th day of September, 1911, more than six months after
the rendition of said judgment."

Answer was filed to this motion admitting the facts as
alleged by the Attorney General, but pleading a motion or sup-
plemental motion for a new trial, and that same was pending
and not disposed of until the 24th day of March, 1911, in view

of which fact they contend the appeal is within time. With this contention we cannot agree. It will be remembered that judgment against the accused was pronounced on the 4th day of November, 1910. Section 6948, Compiled Laws of 1909, provides relative to appeals in felony cases as follows: "In felony cases the appeal must be taken within six months after the judgment is rendered. * * *" This question has been before this court in numerous cases, and before the territorial and state Supreme Courts, and it has been uniformly held that the appellate court is without jurisdiction to consider an appeal on its merits unless the same is perfected within the time provided by statute, which is six months from date of judgment, and not six months from date of passing on supplemental proceedings. No court, either appellate or inferior, has any power to change the statute. The Legislature in its wisdom did not see fit to vest discretion in the courts in the matter of extending the time for perfecting an appeal in a felony case beyond a period of six months from the date of judgment. The law is plain and unmistakeable in its terms. It does not say that the appeal must be taken within six months from the date of the overruling of the motion for new trial or supplemental motion for a new trial, but specifically provides that the appeal must be taken within six months from the day judgment is rendered.

In *Musick v. State*, 5 Okla. Cr. 608, 115 Pac. 377, discussing this section of the statute, this court said:

"Appeals in felony cases must be perfected in this court within six months from the date judgment is rendered by the trial court, and unless this is done this court has no jurisdiction to review the case, and can only dismiss the appeal and direct the trial court to enforce the judgment and sentence."

In *Farmer v. State*, 5 Okla. Cr. 151, 114 Pac. 753, we said:

"No court has the power to grant an extension of time, beyond that allowed by statute, within which an appeal can be filed in this court."

In *Hughes v. State*, 4 Okla. Cr. 333, 111 Pac. 964, we said:

"Notice of appeal given after the expiration of the time provided by statute for taking such appeals is a nullity and will not confer jurisdiction upon the appellate court."

In *Cloyd v. State,* 6 Okla. Cr. 530, 119 Pac. 1125, it was held that notices of appeal in felony cases must be served within six months from date of judgment.

The authorities are voluminous in support of the doctrine, and under statutes similar to ours we know of none to the contrary, and none have been cited by counsel. The question of entertaining this appeal on the merits is not a matter of discretion with this court. If it were, we would gladly review the whole record and discuss each material assignment on its merits. But we have no discretion or jurisdiction in the premises, and our duty is to dismiss the appeal in so far as the questions sought to be raised on the record of the trial are concerned.

We think that the jurisdiction of this court to review the questions raised by the supplemental motion is exceedingly doubtful, but in this case, without intending to establish a precedent, that doubt will be resolved in favor of the plaintiff in error without a discussion of the merits of the motion to dismiss as to this feature and the proceedings and supplemental motion reviewed.

It appears that at the hearing of the motion for a new trial, filed on January 4, 1911, based on newly discovered evidence, all of the testimony taken at the original trial was offered in support of the motion. We have therefore reviewed the entire testimony for the purpose of determining whether or not the trial court committed prejudicial error in overruling this motion. In this connection we desire to quote the statement of the trial court at the time the motion was overruled, and included in the record, which in full is as follows:

"Since the submission of this motion for a new trial on day before yesterday, I have read the affidavits filed in this case and reread a considerable portion of the original record in order that I might be in position to weigh fully the force and effect of the testimony which the defendant proposes to offer, should a new trial be granted in this case. In the first place,

suggestion has been made as to the practice of the court in requiring or requesting that parties heretofore making affidavits in the case be brought before the court and their evidence taken in order to test the knowledge and credibility of such witnesses; and likewise the correctness of the practice to permit the state to file counter affidavits and to produce witnesses to contradict and impeach the testimony and affidavits offered by the defendant.

"While there are perhaps some states in which the use of counter affidavits are not allowable, it appears that the overwhelming weight of authority approves such course as the correct practice. As stated in *Moore v. State,* 96 Tenn. 209, 33 S. W. 1046, this practice was recognized and well established as early as the case of *McGavock v. Brown,* 4 Humph. [Tenn.] 251, where it was said that in criminal cases it had been the constant practice to receive counter affidavits, and new trials are thereby refused upon the facts disclosed in such affidavits; and 'if this practice has prevailed and is found to be useful in other states,' says the same court in the same case, 'it was not only not in violation of but altogether sound practice to require, on this occasion, the presence of affiant in open court in order to test his knowledge and his credibility by an oral examination with regard to the statements contained in his affidavit. *Glidwell v. State,* 15 Lea (Tenn.) 133; *People v. Cesena,* 90 Cal. 381, 27 Pac. 300; *Meeks v. State,* 57 Ga. 329; *People v. Sing Yow,* 145 Cal. 1, 78 Pac. 235; *Nichols v. Commonwealth,* 91 Va. 741, 21 S. E. 364. The great temptation to magnify incidents in aid and interest of those who stand convicted of crime with years of servitude before them presents strong reasons for the trial judge availing himself of the law's best method for sifting the character, conscience, and knowledge of such witnesses in order that a conclusion may be reached which will promote rather than defeat the ends of justice.'

"The rules governing the granting of a new trial on the ground of newly discovered evidence have been reduced to the following requirements by practical uniformity of decision; First, that such evidence could not, with reasonable diligence, have been secured and offered at the time of the trial; second, that it is not cumulative; third, that if such evidence has been introduced it would have, with reasonable probability, compelled a different conclusion.

"The evidence in this case discloses that the defendant, Carl

Howey, was arrested on or about the 25th day of June, 1910, charged with the murder of one Ed Morris; said murder being alleged to have occurred on or about the 7th day of June, 1910. The defendant Howey was immediately brought to the county jail in the city of Chickasha, and was subsequently confined there until his trial and conviction, when he was conveyed to the state prison at McAlester, where he has since remained. The record further discloses that at the preliminary hearing had in said cause on the ———— day of July, 1910, defendant was represented by counsel of his own choice and selection. Subsequently, as is shown by the record in this case, it being called to the attention of this court on the 23rd day of September, 1910, that the defendant Howey had been unable to arrange with his former counsel to represent him upon final trial, and that he was unable to make further arrangements for counsel for his defense, the court designated Messrs. O'Neill and Simpson to defend this defendant. Afterwards, on the 4th day of October, 1910, the case was called for trial, and, by reason of the motion presented by defendant's counsel, was passed until the 5th, when the trial was begun, and the taking of testimony begun on the 6th day of October, 1910. The record further discloses the fact that application for continuance was made by reason of the absence of certain material witnesses for the defendant, and that before the completion of the trial each and every witness requested by the defendant was in attendance upon the court and opportunity given to have such witnesses placed upon the stand. The verdict was returned on the 11th day of October, 1910, finding the defendant guilty of murder, and fixing his punishment at imprisonment in the state prison for life. Subsequently a motion for new trial was filed, and at the suggestion of defendant's counsel was passed until the last possible date, to wit, the 4th day of November, 1910, when certain allegations, as shown by the record in this case, were made touching the question of the identity of the person alleged to have been murdered; the affidavits of the witnesses named as furnishing the newly discovered evidence being wanting, however, on the motion presented at that time. The motion for a new trial was overruled and the defendant sentenced, and the October, 1910, term of the district court of Grady county, Okla., expired by limitation of law and adjourned.

"January 4, 1911, a motion for new trial upon the ground

of newly discovered evidence annexing the affidavits of various witnesses was again presented to the court, and on motion was continued until the 21st day of March, 1911, in order that additional time might be permitted to the state and to the defendants to secure such witnesses as they desired to present on such motion. And it is upon the testimony taken upon this hearing, together with the evidence heretofore offered on the trial of this defendant, that the defendant prays a new trial upon the grounds of newly discovered evidence, contending that such evidence measured by the rules and standard hereinabove suggested, entitled this defendant to a new trial. There is no question as to the materiality of the evidence offered by this defendant on his motion for a new trial.

"With regard to diligence: It has been suggested by counsel that by reason of their late employment in the case they were unable to give full consideration and preparation of the case within the time following their appointment by the court and the date assigned for the trial of the case. But the record will disclose that the defense was presented at all times upon the theory that Ed Morris was not really dead, and that the body found was not that of Ed Morris, and we quote from counsel for the defendant's opening statement in the case; 'We think the proof will further satisfy you that the body found was not the body of Ed Morris, and that Ed Morris is at this time still living and well.' Again it is shown under the evidence in this case that assistant counsel, who was in the case for the defendant prior to the trial, took up the line of travel over which it was claimed Ed. Morris passed, and in fact in line with the path which the witnesses present on this hearing claim to have seen him pass, but no witness was present at the trial who could give positive identification as to having seen Ed Morris subsequent to the date on which it is alleged he was murdered. Though evidence was offered tending to prove that a party seen following the course of travel as that indicated by the defendant was followed by Ed Morris and himself up to the time the defendant and Ed Morris separated, and in the direction presumed to have been gone by Ed Morris after his separation from the defendant. The question then might arise as to whether or not due diligence has been exercised in this case or as to whether or not the evidence offered is not cumulative. In this connection we observe that it is not a sufficient answer to the lack of diligence to say that present counsel have

used every effort and every moment in the search of evidence and failed to secure witnesses who have not been produced. The want of diligence is not chargeable to the attorneys who now represent this defendant, and, if chargeable at all, is chargeable to the defendant whose interest in this matter dates not from the 23d day of September, 1910, as does that of the attorneys by reason of their appointment, but from as early as the 25th day of June, 1910, when defendant was arrested charged with this crime, and, as the record shows, was in a few days ably represented by counsel in an examining trial in the city of Chickasha. But we deem it unnecessary to rest our final conclusions in this case on either of the grounds above suggested and discussed.

"If evidence has been introduced in this case which would with reasonable probability bring a different result or compel a different verdict in this case, a discussion of diligence or cumulation of testimony should have but little weight and bearing. What, then, is the probative force of the testimony presented in this case for a new trial? Weighed in the light of the testimony introduced on the trial of this cause and in the light of all the facts and circumstances presented before this court, to begin with, the testimony upon the trial of this cause discloses, by the evidence of a great number of witnesses, that the defendant, Carl Howey, disposed of certain personal property in the city of El Reno in the month of June, 1910. His identification is complete. This same property, disposed of by Howey at that time, was identified beyond the peradventure of a doubt as the property of Ed Morris, property so unusual as a three-legged dog, all of which property was subsequently secured and returned to the family of Ed Morris.

"The testimony of the defendant, Carl Howey, was thoroughly and unquestionably impeached as to his movements and travels after the time when he admits he was with Ed Morris a few miles west of Chickasha. At the time of the trial, when the wife of Ed Morris had not seen the body of the deceased man she gave descriptions of appearance and clothing which in all material facts agree and coincide with the description of clothing and of person as developed when the body of the dead man was exhumed during the hearing of this motion, as was disclosed by the evidence taken on yesterday. Coupled with the testimony of the wife of Ed Morris is the testimony of his brother and stepdaughter, who are willing to swear pos-

itively as to the identity of the remains, and claim them as husband, father, and brother. These witnesses, coupled with the identification upon the trial of certain keepsakes and curios found in the pockets of the deceased and identified as being Ed Morris', taken together with all the facts and circumstances presented in the trial of this case, seem to present an array of facts compelling but one conclusion. Upon the other hand, several witnesses have been introduced upon the motion for a new trial testifying emphatically and positively as to their acquaintance and familiarity with Ed Morris, whom they identified as the man who married Nancy Riggs, and who had a brother named Walter, or Bert, Morris, and who lived in and about Woodward, Okla., and Englewood, Kan., and connecting the man with their acquaintance in many ways so as to leave little doubt that they at least had had an acquaintance with Ed Morris, who it is not charged the defendant murdered, and they told of various occasions when they saw the same person whom they knew as Ed Morris subsequent to the time it is alleged the deceased was murdered, and at a time when this defendant was incarcerated in the Grady county jail. On the other hand, when one witness testified most strongly as to having seen Ed Morris in the town of Woodward on the occasion of the old soldiers' reunion at that place, the evidence discloses that at that identical time the brother of said Morris was a participant in said celebration, had been previously advised as to the coming of his brother to visit him, who had frequently been visited by his brother Ed Morris, saw nor heard nothing of him, nor have they seen or heard of him to this day, except as they heard of the event of his dead body being found, and the trial and conviction of the one charged with his murder. A witness has likewise been offered to show that parties identifying a person alleged to have been seen during the months of August and October as that of the man who is alleged to have been murdered, while having known Ed Morris for a number of years, had only had occasion and opportunity to see him during the last seven to ten years at intervals of a year or more.

"It is also admitted under the testimony in this case that, perhaps with a bare exception, none of the parties claiming to have seen Ed Morris at the time of their meeting had any information or knowledge of the claim that Ed Morris had been killed; nor was there anything unusual in any of said meet-

ings to impress witnesses with the personality of the man they met. Though such witnesses are positive in their declarations and are positive in their identification of the man they did meet, and whom they now testify to have been Ed Morris, and under these conditions the question is presented whether a jury would reach, with reasonable probability, a different conclusion or arrive at a different verdict with such newly discovered evidence presented before them in connection and in conjunction with all the evidence heretofore presented on the trial of this cause.

" 'It is a well-known fact and the common experience of all that a person may be mistaken, and sometimes is, as to the identity of his well-known friends, - meeting them under circumstances when one would feel that a mistake could not well occur,' said Judge Tuck. And likewise an expression by a learned judge in the case of *Tisdale v. Insurance Co.*, 23 Fed. Cas. 1302, when it was observed that: 'The jury must receive and consider evidence of personal identity, which is inconsistent with other evidence in the case, with scrupulous care and caution.' That observation recalls the testimony of the witness presented on the motion for rehearing in this case as to the fact that the brother of the said Ed Morris was frequently addressed by his friends and neighbors in Woodward as Ed, and it likewise recalls the testimony of another witness who testified that there lives in that section of the country in and about Woodward and southern Kansas another person named Ed Morris, and who operated a 'cat wagon,' such an institution as certain witnesses have undertaken to connect Ed Morris with, whom they identify as having seen during the month of October, and whom they seek to identify as the party whom the defendant stands charged with murdering.

"Moore, in his work on Facts, recalls the observation of Colegroce on Memory, wherein it is asserted that, 'A large portion of men's minds never see facts accurately at all,' and it is further observed that, 'How easily one, upon leaving a mirror, forgets how he looks;' and as noted by St. James where it is said, 'He beholdeth himself and goeth his way and straightway forgetteth what manner of man he was.' And so in face of all the facts presented in this case, the testimony of parties to whose attention no act of murder had been called, no unusual conditions being present to impress upon them the personality of the man, meeting a person whom they had known

for years but with only occasional meetings, without any personal interest, and no ties to cause them to give particular heed or attention, can the testimony of these men raise a reasonable probability of a change of verdict in this case, in the face of the testimony impeaching every act and movement of the defendant, and in the face of the testimony of three members of the family, who identify positively the remains of the deceased as that of their loved one, and in the face of a want of trace of Ed Morris for more than nine months; when no motive is presented for his voluntary absence? But, on the other hand, the evidence of cordial and affectionate relations with his brother, living in the immediate vicinity of the place witnesses claim to have seen him.

"It occurs to me, granting, as I do, the utmost sincerity of the witnesses who have testified in behalf of this defendant, that their identity of the person seen by them as being that of Ed Morris, who formerly lived at Anadarko and who was the husband of Nancy Morris, is absolutely inconsistent with the physical facts, and undisputable record of facts in this case, and in spite of the testimony offered in this case as newly discovered evidence, there is no reasonable probability that a jury would or could reach a different conclusion than that reached on the former trial of this case.

"Feeling, as I do, the weight of responsibility that has been presented by reason of the motion in this case, granting and realizing the utmost sincerity of counsel in this case in the justness of their contention, and commending them for the untiring zeal which they have exercised, to the end of justice I feel that this motion should be overruled, and it is so ordered."

We fully agree with the findings and rulings of the trial court, and, after reading all the testimony, we are unable to reach a conclusion that an honest, intelligent jury on a new trial could do otherwise than find this plaintiff in error guilty. The evidence of guilt in this record to our minds is conclusive.

The judgment of the trial court denying the motion for a new trial on the ground of newly discovered evidence is affirmed, and the cause remanded to the district court of Grady county, with direction to enforce the judgment and sentence originally imposed.

DOYLE and FURMAN, JJ., concur.