## JIM NOEL v. STATE.

No. A-2968.	Opinion Filed August 17, 1918.

(174 Pac. 293.)

1. **ROBBERY—Motion to Acquit—Evidence.** Evidence examined, and **held** sufficient to sustain the material allegations of the indictment, and to authorize the court to overrule a motion to advise the jury to acquit the defendant.

2. **APPEAL AND ERROR—Sufficiency of Evidence—Accomplice's Testimony.** Where an accomplice testifies that he jointly with the defendant robbed a bank, and there is positive testimony of one credible witness, who positively identifies the defendant as one of the robbers, this court will not disturb the judgment because the testimony of other witnesses as to the identity of the defendant conflicts with the testimony of the witness corroborating the accomplice. Such question of fact was for the determination of the jury.

3. **NEW TRIAL—Newly Discovered Evidence—Discretion of Court—Cumulative Evidence.** A motion for new trial upon the ground of newly discovered evidence is addressed to the sound discretion of the court. Where the evidence sought to be produced is purely cumulative, it will not be held to be a manifest abuse of discretion on the part of the trial court to overrule such motion, when, after an examination of the entire record, it is apparent the defendant had a fair and impartial trial in every respect.

*Appeal from District Court, McCurtain County;*
*C. E. Dudley, Judge.*

Jim Noel was convicted of the crime of conjoint robbery, and his punishment assessed at imprisonment in the state penitentiary for a term of ten years, and he appeals. Affirmed.

Plaintiff in error, together with one Earl Holman, were jointly indicted for the crime of robbery committed by them on the 21st day of May, 1914, in that they did "unlawfully, willfully, and feloniously and wrongfully and by means of force and fear take from the possession of J. M. Beasley, and against his will, the sum of $1,300 lawful money of the United States." This was a case of bank robbery committed prior to the time the special statute punishing such crime was enacted.

Earl Holman, jointly indicted with the plaintiff in error, obtained a dismissal of his prosecution in order that he might become a witness against Noel, and Holman testified that he, together with Noel, robbed the bank of Millerton on the said 21st day of May, 1914; that they held up persons in the bank, by means of the use of pistols, between 1 and 2 o'clock in the afternoon; that there were three people in the bank at the time, one of whom was behind the counters, the other two being apparently customers of the bank; that after the robbery, they mounted their horses and rode back the way they had come from the north. They rode north about six or seven miles to Little river, where they were overtaken as they were crossing said river and fired at by some members of a posse; that in getting out of the river on the other side Noel lost his hat, and Holman, who was carrying the

money at the time, dropped it also near the place where Noel lost his hat; that they were not overtaken, but continued on in a northwesterly direction to their place of abode near the town of Corrinne, in Pushmataha county, a distance of about 40 miles from the scene of the robbery. At the time Holman testified he was a prisoner in the state penitentiary, having been previously convicted of larceny and robbery, and was then under sentence in two cases for a term of six years each. He admitted that the prosecution against him had been dismissed, and that he had promised to testify against his codefendant. The defense relied upon was an alibi, Noel claiming that on the afternoon of the 21st day of May, 1914, he attended the funeral of a boy by the name of Raines in the town of Spencerville, a distance of 35 miles northwest of Millerton, where the robbery occurred. In this he was supported by the testimony of three witnesses from Spencerville.

*John Cocke,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J. (after stating the facts as above). It is first contended by counsel for plaintiff in error that the court erred in refusing to give a peremptory instruction to the jury to return a verdict of not guilty. In this connection it is contended that there is no showing in the record that any amount of money was taken from the person or the immediate presence of J. M. Beasley. We think the evidence in this respect is sufficient to have authorized the jury to reach the conclusion that the person robbed was J. M. Beasley, the cashier of the bank of Millerton. We quote from the record as follows:

L. D. Schoonmaker, the president of the bank, and the first witness introduced by the state, testified as follows.

"Q. What is your name? A. L. D. Schoonmaker. Q. What is your occupation? A. Banker. Q. Did you have any connection on or about the 22d day of May, 1914, with the Bank of Millerton? A. I was president of it. Q. Who was the cashier? A. Mr. J. M. Beasley."

And the witness for the defendant, C. O. McPheeters, testified as follows:

"Q. Did they take any money there to your knowledge that day? A. Yes, sir. Q. What was done after you all held up your hands? A. After I held them up, there was a small man passed Mr. Goff and I, and went down to the side where the cashier stays and threw down a long white sack, the kind generally used by merchants, that would hold about 160 pounds, I expect— Q. Did they put the money in that? A. Yes, sir. Q. What was done then? A. They told Mr. Beasley to do it up. Q. Well, did he tie it up? A. Yes, sir. Q. Then what was done? A. I believe he says, 'Give it to me.' Q. Then what was done? A. He come and marched us out in front of him. Q. Then what was done? A. They got on their horses and rode off, and we walked down the street."

This testimony shows, in substance, that J. M. Beasley was the cashier of the Bank of Millerton on the 21st day of May, 1914; that the bank was robbed on that day, and the money taken from the cashier, and the testimony of Messrs. Schoonmaker and McPheeters clearly shows that it was taken from Mr. Beasley, and identifies Mr. Beasley, who was robbed, as being the cashier of the bank and acting there at that time, and it shows that Mr. Beasley at the command of one of the robbers put the money in a sack and tied it up and delivered it to the

robber, and all this was done after the people in the bank were held up at the point of pistols. We hold, therefore, that the evidence is sufficient to show that the person robbed was J. M. Beasley, as alleged in the information.

It is also contended that testimony of the accomplice is not sufficiently corroborated. It is admitted in the brief of counsel for plaintiff in error that the witness L. D. Schoonmaker positively identified Jim Noel as one of the men passing his house on horseback immediately before the bank was robbed and that he was riding with another person in the direction of the bank, both carrying rifles, and they were traveling south and coming from the north on the road that leads toward Bismark, and that shortly thereafter, and after the bank was robbed, the same parties were seen rapidly riding back north, again along the same highway. The testimony of all of the witnesses is to the effect that the bank was robbed by two men who came from the north riding horses, and that they returned in the same direction. But it is contended that Schoonmaker's testimony is directly in conflict with the testimony of several of the witnesses who were introduced by the defense, and therefore the preponderance of the evidence is in favor of the innocence of the defendant. Perhaps that would be so where the jury is bound to give weight to the testimony of the witnesses according to the number produced, but the statutes of this state provide that "questions of fact are to be decided by the jury." Section 5873, Rev. Laws 1910. Schoonmaker's testimony, together with other circumstances contained in the record, if believed by the jury, tends to connect the defendant, Jim Noel, with the commission of the robbery, and in the opinion of the court is sufficient corroboration under our

statute to authorize a conviction. True, the testimony is strongly in conflict with that of other witnesses, but, as heretofore indicated, it was up to the jury to reconcile these conflicts, if possible, and, if not, then the jury must determine whom to believe and whom not to believe; and, if there is competent evidence in the record such as would authorize a conviction, this court is not at liberty to substitute its opinion for that of the jury on any question involving only the sufficiency of the evidence. The weight of the evidence and its convincing effect was for the jury and not for the court. In criminal cases the effect which the evidence shall have as tending to establish the guilt of the accused is for the jury. If they find it insufficient to establish guilt, there is no power in the court to set aside their verdict, though the trial judge might be convinced that the verdict was against, not only the weight of the evidence, but against all the evidence. On the other hand, if there be evidence which fairly tends to prove the guilt of the defendant, and the jury find the guilt, the court cannot properly set aside such verdict because he may entertain doubts as to its sufficiency to establish such guilt. See *Harrison v. State,* 10 Okla. Cr. 210, 135 Pac. 948; *Benson v. State,* 10 Okla. Cr. 16, 133 Pac. 271.

It is also contended that the court erred in denying defendant's motion for a new trial upon the ground of newly discovered evidence. It is contended in this motion that after his conviction the defendant discovered eight more witnesses in the town of Spencerville who would testify that he was present at the funeral of young Raines on the 21st day of May, 1914. It is admitted that this evidence is cumulative, but it is contended that a new trial should be granted for the reason that these witnesses

would give different reasons for knowing that Raines' funeral was on the 21st day of May, 1914, and that the defendant was present on that occasion. It has been repeatedly held by the courts of this state that a new trial will not be granted on the ground of newly discovered evidence where the evidence is merely cumulative or is for the purpose of impeaching witnesses introduced by the state. The witnesses who testified for the defendant in this trial were positive as to the date and the occasion upon which the defendant was present in Spencerville. The testimony of the other witnesses for which a new trial was asked could not be more conclusive upon these propositions. The fact that they may give different and other reasons for knowing such fact would not change the nature of their testimony. It would only tend to establish the alibi, which was the defense relied upon in this trial. The testimony, therefore, was purely cumulative. None of the witnesses who testified to this alibi were sought to be impeached by the state except as their evidence conflicted with that of the state's witnesses.

These matters that are urged especially as grounds for reversal of this judgment are matters which might have some weight as grounds for executive clemency, but are not reasons why an appellate court should reverse a judgment of conviction. An unlimited line of authorities of this and other appellate courts are clearly to the contrary.

A motion for new trial upon the ground of newly discovered evidence is addressed to the sound discretion of the trial court, and a ruling thereon will not be disturbed except for an abuse of discretion; the presumption being that the discretion was properly exercised. The

evidence sought to be produced being purely cumulative, we cannot hold that it was a manifest abuse of discretion on the part of the trial court to overrule this motion for new trial on the ground of newly discovered evidence. *Howey v. State,* 9 Okla. Cr. 453, 132 Pac. 499; *Harper v. State,* 7 Okla. Cr. 581, 124 Pac. 1116; *Drew v. State,* 6 Okla. Cr. 348, 118 Pac. 677.

We have examined the instructions given by the court, to none of which, so far as the record shows, was an objection made or exception taken. The instructions clearly state the law of the case and are impartial. Likewise were the rulings of the trial court on the admission and exclusion of evidence. It appears that this defendant had a fair and impartial trial in every respect. The matters urged by counsel for plaintiff in error for a reversal of the judgment of conviction are ably presented, but are not such as would justify this court in reversing the conviction where the showing is that a fair and impartial trial was granted this defendant throughout the entire proceeding.

The judgment of conviction is therefore affirmed.

DOYLE, P. J., concurs; ARMSTRONG, J., not participating.