## JIM STILWELL v. STATE.

No. A-3496—Opinion Filed Sept. 25, 1920.

(192 Pac. 253.)

(Syllabus.)

1.  **NEW TRIAL—Discretion of Trial Court—Newly Discovered Evidence.** The granting of a new trial on the ground of newly discovered evidence rests largely in the discretion of the trial court.

2.  **SAME—Sufficiency of Showing.** A new trial because of new evidence discovered material to the defendant should not be granted unless the evidence is such which could not, with reasonable diligence, have been discovered before the trial.

3.  **SAME.** A new trial on the ground of newly discovered evidence should not be granted, unless there is a reasonable probability that the new evidence would likely change the result, should a new trial be granted.

4.  **SAME—Refusal of New Trial.** Where, in a motion for a new trial on the ground of newly discovered evidence, there is no proper showing that such evidence was in fact newly discovered, and the motion does not set out any facts or circumstances showing diligence to discover such evidence, and it is apparent, also, that the alleged newly discovered evidence, when considered in connection with the evidence introduced upon the trial, is largely cumulative, and is not such as would likely change the result, should a new trial be granted, no manifest abuse of discretion is shown by the trial court in overruling the motion.

*Appeal from District Court, Jefferson County;*

*Cham Jones, Judge.*

Jim Stilwell was convicted of the crime of grand larceny, and sentenced to serve a term of four years in the state penitentiary, and he appeals. Affirmed.

On the night of the 17th of April, 1918, one R. C.

White, a farmer living about six miles east from the city of Waurika, in Jefferson county, Okla., had his Ford automobile stolen from a barn located on his premises. The absence of the car was discovered on the next morning. Jim Stilwell, the defendant, had been doing some carpenter work at White's place, was familiar with the premises, and knew that White owned a Ford car, which he kept in his barn; the evidence also disclosing that Stilwell had driven White's car.

On the morning following the larceny, and after the discovery that the car was gone, White made an examination of his premises, and found the tracks of three men leading up to his barn, and similar tracks leading away from the barn, showing that the automobile had been pushed out of the barn a distance of about a quarter of a mile down into a ravine, where it had been cranked and there driven away in a westerly direction. There was also discovered the track of a larger car, not far distant from where White's car had been cranked, and this car had been driven into a pasture, and the tracks of three men led away from it up to White's barn. The imprint of one of the tires on the larger car in the soft clay was preserved, and this imprint tallied exactly with a car owned by Miss Kirk, a sister of Elmer Kirk and Wesley Kirk, who were jointly charged with the larceny of White's car.

The sheriff of Jefferson county, Mr. Ballard, after having been informed that White's car had been stolen, made certain investigations for the purpose of discovering who might be the guilty parties. He made an examination of the footprints at the scene of the larceny, and the measurment of one of these footprints tallied exactly with the measurement of the shoes of Elmer Kirk, who was jointly

tried with this defendant, and convicted and sentenced to serve a term of two years' imprisonment in the penitentiary. No appeal was taken by Elmer Kirk.

Several days after the commission of the larceny, the defendant, Jim Stilwell, was arrested at Holbrook, Ariz. The Ford car belonging to White was also found there, close to a little shack in which Stilwell was staying. Sheriff Ballard testified that, when he was returning to Waurika with Stilwell, Stilwell told him that he was going to plead guilty to the charge of stealing White's car, and turn over a new leaf and try to make a man out of himself. Stilwell, as a witness, denied making any such statement to the sheriff. Stilwell also denied that he participated in any way in the larceny of White's car. He said that on the night of the 17th of April, about 11 o'clock, Elmer Kirk and Wesley Kirk came to his house in the Ford automobile, and that he immediately left with Wesley Kirk for the purpose of looking for work; that they drove the car through Texas into New Mexico, and from there to Holbrook, Ariz., where they both went to work for a railroad company; Stilwell in the capacity of a carpenter, making box cars, and Wesley Kirk as a bridge worker.

There is no evidence in the record that either of the Kirks knew White, or knew that he was possessed of a Ford car. Elmer Kirk's defense was an alibi, and in this respect he contradicted the defendant Stilwell, denying that he was at Stilwell's house at any time on the night of the 17th of April, 1918, but testified that he stayed at home with his sister on that night from about 10:30 o'clock until the next morning; that prior to 10:30 o'clock he was in the town of Waurika. In this alibi, Elmer Kirk is corroborated by the testimony of his sister, while Stilwell is corroborated

by the testimony of his wife that Elmer Kirk appeared at their house on that night. Wesley Kirk was at that time a fugitive from justice, and, although this fact was known to Stilwell, he left with him at that time. The evidence also discloses that Wesley Kirk was killed while attempting to escape arrest at or near Holbrook.

The evidence on the part of the state tends conclusively to show that White's car was stolen by three men, who pushed it out of his barn some time during the night of April 17, 1918, and the circumstantial evidence in the record tends conclusively to establish that the defendant, Jim Stilwell, was a participant in this larceny in collusion with Elmer and Wesley Kirk. The theory of the defendants is that Wesley Kirk alone stole the car, that Elmer Kirk had nothing to do with it whatever, and that Jim Stilwell was not a participant in the larceny, but merely went away with Wesley Kirk for the purpose of hunting work as a carpenter.

There was also found by the sheriff, among other papers, in the coat belonging to Jim Stilwell at the time of his arrest at Holbrook, Ariz., a certain bill of sale to a Ford automobile, which bill of sale was dated the 21st day of March, 1918, and, after having been identified by the sheriff as having been taken from the coat belonging to this defendant, was admitted in evidence, over the objection and exception of counsel for defendant. There was also admitted in evidence a certain package of mail, addressed to Elmer Kirk, which had been left in a store at Waurika, which said package contained dies, stamps, and stencils for the purpose of changing numbers on automobiles, contrivances commonly used by automobile thieves. The defendant Stilwell denied any knowledge of the possession of the bill

of sale, and also denied that he had at any time ever owned a Ford automobile. He also denied any knowledge of the package of dies, stamps, and stencils. The defendant Elmer Kirk also denied any knowledge of this package.

*Bridges & Vertrees,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

MATSON, J. (after stating the facts as above). The sole ground relied upon in the brief of counsel for defendant as ground for reversal of this judgment is that the trial court erred in overruling the motion for a new trial on the ground of newly discovered evidence. In the motion for a new trial, the defendant presented the affidavit of one L. M. Kirk, who was the mother of the defendants Elmer Kirk and Wesley Kirk. In the affidavit Mrs. Kirk says that the package of dies, stamps, and stencils were ordered by Wesley Kirk without the knowledge of Elmer Kirk, and were ordered sent in the name of Elmer Kirk, for the reason that Wesley Kirk was at that time hiding from the officers, and that, when the package came, she (witness) put them in her trunk, intending to send them back, but never did it; also regarding the bill of sale, Mrs. Kirk says that the same was written by Wesley Kirk in her presence some time before the automobile in question was stolen, and that defendant Stilwell had nothing whatever to do with drawing this bill of sale. There was also attached to the motion for a new trial the affidavit of the defendant Jim Stilwell, to the effect that he had for the first time since the trial of said cause been informed of what the testimony of L. M. Kirk would be respecting these matters.

The affidavit of L. M. Kirk states that she was not sub-

poenaed as a witness in the trial of said case, and never mentioned the facts contained in her affidavit until some two hours after the case had been submitted to the jury. It has been repeatedly held by this court that the granting of a new trial on the ground of newly discovered evidence rests largely in the discretion of the trial court. *Noel v. State,* 14 Okla. Cr. 548, 174 Pac. 293; *Howey v. State,* 9 Okla. Cr. 453, 132 Pac. 499.

A new trial because of new evidence discovered material to the defendant should not be granted, unless the evidence is such which could not, with reasonable diligence have been discovered before the trial. Section 5937, Revised Laws 1910. The witness by whom it was proposed to produce the new evidence was the mother of one of the defendants. The very intimate relation existing between the witness and one of the defendants, especially in the absence of any showing that the mother was not present at the trial of her son, would indicate that very little diligence was resorted to prior to the trial to learn what the mother might have known beneficial to her son. Especially is this view impressed upon the court because of the fact that the sister of the defendant Kirk testified fully in his behalf.

The motion in this case does not state fully the circumstances which make it appear, as a matter of fact, that such evidence was really newly discovered, and could not have been discovered by the exercise of proper diligence. We believe, therefore, that the trial court was justified in overruling the motion for a new trial, because the motion did not contain statements of facts or circumstances showing the exercise of proper diligence to procure the evidence and to show that it was newly discovered.

Secondly, the evidence is to a certain extent cumulative, in that it only tends to corroborate each of the defendants who testified as witnesses that they had no knowledge or any connection with either the bill of sale or the package of dies, stamps, and stencils. The rule is also well established that a new trial on the ground of newly discovered evidence should not be granted, unless there is a reasonable probability that the new evidence would likely change the result, should a new trial be granted. *Howey v. State, supra.*

When considered with all the evidence introduced at the trial, it is very improbable that, should a new trial be granted and the new evidence submitted, any different result would ensue, especially as to the defendant Stilwell. Stilwell's connection with Wesley Kirk, both before and after the commission of the larceny, is so thoroughly established by the facts and circumstances in evidence, together with the admissions of the defendant himself, that it is entirely improbable that the mere fact that testimony that a bill of sale to a Ford automobile, the kind of car found in the possession of Stilwell at the time of his arrest, was entirely the work of Wesley Kirk, would have any likelihood of creating a reasonable doubt in the minds of the jurors that Stilwell was not connected with Kirk in this particular larceny. In truth, the evidence that Wesley Kirk forged the bill of sale which Stilwell possessed only tends to strengthen the state's theory of the case that the three men, Wesley Kirk, Elmer Kirk, and Jim Stilwell, were all present and active participants in this larceny. It tends to support the theory of the state that Stilwell at least aided and abetted Wesley Kirk in the asportation of the

stolen car, knowing that the same was at that time in the act of being stolen.

Considering the alleged newly discovered evidence applicable to the defense interposed by this defendant, we find no reversible error committed by the trial court in overruling the motion, as there is no reasonable probability or likelihood that the alleged newly discovered evidence would warrant the acquittal of this defendant, or even raise a reasonable doubt of his guilt, when considered in connection with the other evidence against him, and there is no proper showing that such evidence was in fact newly discovered, and no showing of diligence by setting out facts and circumstances in the motion, and no manifest abuse of discretion shown in overruling the motion.

For reasons stated, the judgment of conviction is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.