# DOCK SMITH v. STATE.

No. A-5382.   Opinion Filed May 11, 1926.
Rehearing Denied May 27, 1926.
(246 Pac. 883.)

Mathers & Renegar, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Houston B. Teehee, Asst. Atty. Gen., for the State.

EDWARDS, J.  The plaintiff in error, hereinafter called defendant, was convicted in the district court of Carter county of manslaughter in the first degree, and sentenced to serve a term of 15 years in the state penitentiary.

The record discloses a state of facts about as follows: The defendant, a horse trader, who lived in Ardmore, had bought a team of horses from the deceased, Wiley or Wallace Sam. Sam was a restricted Choctaw Indian, and the purchase of the team was without the consent of the Department of the Interior, and some time later the Indian Agency recovered the team and redelivered it to Sam. Defendant was not repaid the purchase price. In December, 1923, Sam and defendant met in a wagon yard at Ardmore and there, according to the evidence for the state, defendant walked up behind Sam, struck him on the head with a piece of iron pipe, knocking him to the ground, and again struck him on the head and kicked him. Defendant paid a fine for assault and battery before the local authorities. A few minutes later he returned to the wagon yard, took the iron pipe and threw it behind a building, and later the police officers were told by the wife of the deceased where defendant had thrown the iron pipe, and it was found, with blood on one end of it. Sam was taken to the police station and later removed to the hospital. At the hospital he was examined, a wound found on the head, and he was bleeding from the wound and the nose. An X-ray disclosed an indention of the skull. He remained in the

hospital about a week and was released; later he suffered from fits and complained of pain in the head. He died on June 7, 1924, after a brief illness. After the death of Sam an autopsy disclosed that the skull had been indented about 1 1-2 or 2 inches, and there were blood clots on the brain. The physicians who made the autopsy testified the condition of the brain was sufficient to produce death. Defendant denied that he struck deceased with an iron pipe, but claimed he struck only with his fist, and that in his own defense.

It is first contended that there is a fatal variance between the information and the proof in this, the information charges the defendant with killing Wiley Sam, while the evidence discloses that the true name of the deceased was Wallace Sam. When the wife of deceased testified, she was asked the name of her husband. She answered it was Wiley Sam. Counsel for defendant interposed, and with permission of the court asked the correct name of her deceased husband, and she stated that his true name was Wallace Sam. The court then ordered the information corrected to read Wallace Sam instead of Wiley Sam. The jury was withdrawn and the county attorney offered several witnesses, who testified that deceased was generally known by the name of Wiley Sam, and that, while probably his true name was Wallace, he was known more generally by the name of Wiley. The court thereupon struck out his order to correct the name, and the prosecution proceeded against defendant for the murder of Wiley Sam.

It is, of course, fundamental that a person may not be charged with the commission of an offense against one person and be convicted of an offense against another, and an accused has a right to know definitely the particular charge he must defend against. This right, however, is not violated by the state of facts shown by the

record. It is said that the object and purpose of describing a person by his name is to identify him, and the general rule is that one may be designated in legal proceedings by the name by which he is commonly known, although not his true name, even though he may be known both by the name by which he is commonly designated and by his true name. 19 R. C. L. 1333. See, also, Spaulding Imp. Co. v. Goforth, 54 Okla. 705, 154 P. 649; Bacon v. Dawson et al., 53 Okla. 689, 157 P. 1033; Roberts v. Mosier et al., 35 Okla. 691, 132 P. 678, Ann. Cas. 1914D, 423.

There was no question about the identity of the person injured. It is not a matter of different individual or a different name, but the description of deceased by a name under which he was commonly known instead of his correct name. If the name of the deceased had not been known to the prosecutor, he might have been designated as John Doe or any other description which would apprise defendant of the particular person he was charged with killing. There was no prejudice to defendant under this record in describing deceased as Wiley Sam. See section 2560, Comp. Stat. 1921.

Complaint is next made that the trial court committed prejudicial error in refusing to require the court reporter to take down the remarks of the county attorney. The motion for a new trial sets out that, during the argument of the county attorney, counsel for defendant objected to the argument and was directed by the court to be seated and counsel thereupon requested the court to call the reporter and have the remarks of the county attorney taken in shorthand, and the request was refused by the court and exceptions taken. This is supported by three affidavits; two by attorneys for the defendant, and one by another member of the bar. Section 3065, Comp. St. 1921, makes the duty of the court reporter to

take in shorthand and transcribe, when required, all the proceedings upon the trial of any case, as well as all statements of counsel, the witnesses, or the court, when required by any party or his attorney, and that counsel in any case shall have the right to request the taking of any such statement or proceedings; and a refusal of the court to permit, or, when requested, to require, any of the proceedings to be taken down or transcribed after being taken down, may be shown by affidavit or otherwise, and shall be deemed prejudicial error without regard to the merits. This statute has been several times considered by this court, and it is held to be the duty of the court, upon request, to have the proceedings taken in shorthand and transcribed. Lamm v. State, 4 Okla. Cr. 641, 111 P. 1002; Walker v. State, 6 Okla. Cr. 370, 118 P. 1005; Miller v. State, 9 Okla. Cr. 255, 131 P. 717, L. R. A. 1915A, 1088; Tudor v. State, 14 Okla. Cr. 67, 167 P. 341; Ewing v. State, 17 Okla. Cr. 690, 190 P. 274.

In the Tudor case, supra, the court, in affirming the judgment, said:

"After considering the whole record, we conclude that this judgment should not be reversed upon this ground. The trial courts, however, are warned against the practice complained of. The law entitles a defendant to have every utterance during the trial recorded and transcribed if he so desires, and no trial judge has the authority to deny him this privilege. The fact that the record before us is sufficiently complete to enable us to determine the merits of this matter is the only ground upon which the judgment can stand. * * * Upon a careful consideration of the entire record in this case, we feel that it would be a miscarriage of justice to reverse this judgment, and that, while the irregularities complained of may contain some merit, they were not prejudicial to the substantial rights of the accused. It is absolutely clear that no honest and intelligent jury, under the facts, would render a different verdict upon a retrial of the cause."

In the later case of Ewing v. State, supra, which was a close case, a request was made upon the court reporter to take the further remarks of the county attorney, and was refused by the trial court; this court reversed the judgment.

In the record before us the remarks of the county attorney are preserved by affidavit. There is no showing made that after the request that the remarks be taken the county attorney made any further objectionable argument. We consider and treat the affidavits filed as true and as a part of the record and give them full consideration. The argument is not, however, prejudicial, but is a reasonable deduction of facts proven from the standpoint of the state.

Section 3065, with section 2822, the harmless error statute, which was adopted with the Revised Code of 1910, should be considered and construed together; and, where the court fails to have any of the proceedings taken and transcribed, such failure, unless it is prejudicial under the entire record, will not alone work a reversal.

We do not know why a trial court should decline to require the court reporter to take any of the proceedings that may be requested. Court reporters are paid by the state to perform this duty, and, while a matter desired to be taken may not appear material to a trial court, it is, nevertheless, the right of counsel to have it transcribed. We must assume either that the court had not read this statute or had it called to his attention. It is only because the argument objected to is before us, and we find it to be without prejudice, that this error of the court is not reversible.

Finally, it is urged that the county attorney, in his closing argument, was guilty of improper conduct which tended to arouse the passion and prejudice of the jury against the defendant. The contention is not borne out by the record. The argument complained of falls far short

of the rule announced by this court that, before a reversal may be had on the misconduct of counsel in his argument, it must be grossly improper upon some material point, which might injuriously affect the defendant's rights. Tucker v. State, 33 Okla. Cr. 302, 243 P. 998; Prather v. State, 14 Okla. Cr. 327, 170 P. 1176.

The evidence is ample to sustain the verdict, and no such prejudicial error appears as requires a reversal.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.