## J. M. SELVIDGE v. STATE.

No. A-8162.   Jan. 23, 1932.
(7 Pac. [2d] 493.)

John T. Levergood, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the superior court of Pottawatomie county of the crime of robbery with firearms, and his punishment fixed by the jury at imprisonment in the state penitentiary for a period of 30 years.

The state charged that the defendant and one Bill Armstrong on the 23d day of November, 1930, robbed, by the use of firearms, the Bison Theater in the city of Shawnee, obtaining about $1,100 in cash.

The evidence of Jack Burger and Dorothy Clouse, who were employees of the theater company that operated the Bison Theater, was that on November 23, 1930, at about 9:45 p. m., they were taking the receipts for that day up to the office of the theater, which was on the

mezzanine floor, for the purpose of putting the money in the safe; that when they got to the top of the stairs they noticed two men sitting in chairs in the lobby; that when Burger opened the door of the office and handed Miss Clouse the bag with the day's receipts in it, these two men made a rush and after a struggle succeeded in shoving Miss Clouse through the door; that they followed her in, covered them with pistols and threatened to kill them if they made an outcry, and proceeded to rob the theater of the $1,100, a part of which was taken from the safe; that they also tied the witnesses with some electric light wire and gagged them.

That Armstrong was the owner of a bluish colored Ford coupe, with large casings; that defendant and Armstrong put this car in a garage and checked two guns in the garage man's safe, on Friday evening before the robbery; that one of these guns was an automatic with a hammer; that the gun produced by the state at the trial looked like the gun checked in at the garage; that there were some 38 and 45 caliber shells in the pocket on the door of the car; and that some of the shells would fit the gun exhibited by the state.

That on Friday following the robbery defendant and Bill Armstrong were arrested in the city of Bartlesville. These witnesses, Burger and Clouse, positively identified the defendant as one of the robbers. The defense was an alibi.

Defendant alleges numerous errors, but argues them all under three heads:

First, misconduct on the part of the county attorney in repeatedly asking prejudicial questions.

Counsel for defendant in his brief points out three

instances wherein he alleges that the county attorney persisted in asking incompetent and prejudicial questions in cross-examination of certain of defendant's witnesses.

An examination of the record discloses that these objections on the part of defendant's counsel were uniformly sustained, and in one instance the county attorney was admonished by the trial judge not to ask that line of questions. There was no repetition of these alleged improper questions to any witness after the court had ruled against the county attorney. Counsel for defendant cites Pickrell v. State, 5 Okla. Cr. 391, 116 Pac. 957, and later cases following that decision, where the court condemns, not the asking of incompetent questions, but the persistent asking of such incompetent questions after the court has ruled upon the same and the taking of exceptions thereto, all of which appears to have been done for the purpose of prejudicing the jury.

In Hendricks v. State, 23 Okla. Cr. 18, 212 Pac. 330, this court said:

"The fact that the county attorney asked some questions which may have called for imcompetent testimony is not prejudicial error, where the trial judge promptly sustained objections and no incompetent evidence was permitted to go to the jury, and there was no such repeated asking of these questions and exceptions to the ruling of the trial judge by the county attorney that amounted to prejudicial misconduct." See, also, Pitman v. State, 33 Okla. Cr. 165, 242 Pac. 288.

An examination of the record discloses the asking of some incompetent questions, but that the county attorney desisted from asking such questions when objection was sustained thereto by the court. The record brings this case within the rule laid down in Hendricks v. State, and Pitman v. State, supra.

Defendant next contends that the court erred in excluding evidence of defendant's alibi.

The record does not support the contention of the defendant that the court excluded all of the evidence of the witness Buckhalter, who testified that he saw the codefendant, Armstrong, in Sayre, Okla., at 11 o'clock p. m., on November 23, 1930, the night the Bison Theater was robbed in Shawnee. Buckhalter did not testify that he saw the defendant in Sayre on that occasion. He did testify that Armstrong pawned his watch to him for $8, and that the filling station man also gave Armstrong some gasoline and oil. On motion of the county attorney, the trial court struck from the consideration of the jury all of Buckhalter's testimony relative to the transaction he had with Armstrong relative to the pawning of the watch, because Buckhalter testified that he did not see defendant there, but did not take from the jury the evidence given by Buckhalter as to Armstrong being in Sayre at the time of the robbery.

The court left with the jury the testimony of Mrs. Isabel Van Horn that she saw Armstrong and defendant in Sayre on the night of the 23d of November, and that they were both at the filling station where Buckhalter testified that he had seen Armstrong. The court also left before the jury the evidence of Mrs. Van Horn that she saw Armstrong and defendant between 2 and 5 o'clock on the evening of November 23, 1930; that Armstrong came to her house about 9 o'clock Sunday evening and stayed until Monday evening at 4 o'clock; and that she went riding with Armstrong and defendant all Sunday afternoon, and that defendant came back to her house that night with Armstrong.

The court also left the evidence of M. L. Lively, who

testified that on the 23d day of November, 1930, he was running a rooming house in Shamrock, Tex., and that defendant was there at his place that day; that two came and the defendant was one of them; that defendant was registered at his hotel on the day before.

The defense of alibi was concretely before the jury. The trial court did not err in striking out the testimony of the witness Buckhalter relative to the transaction he had with Armstrong about the pawning of the watch and the giving of the check for the same, but this error is not sufficient to require a reversal of the case.

Section 2822, C. O. S. 1921, provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." Rogers v. State, 9 Okla. Cr. 277, 131 Pac. 941; Cooper v. State, 12 Okla. Cr. 142, 152 Pac. 608; Blanck v. State, 14 Okla. Cr. 339, 169 Pac. 1130; Smith v. State, 34 Okla. Cr. 318, 246 Pac. 883.

Finally, defendant contends that the court erred in refusing to grant the defendant a new trial on the ground of newly discovered evidence.

This alleged newly discovered evidence relates to the fact that a certain check which the defendant introduced as evidence on his alibi, alleged to have been given by Buckhalter to Bill Armstrong for the pawning of the watch by Armstrong to Buckhalter, bore the perforated cancellation mark of payment by the bank of October 24,

1930, instead of November 24, 1930. In support of the motion for a new trial defendant offered some affidavits by an officer and an employee of the bank that this perforated mark was incorrect, and that the bank clerk had made a mistake in not changing the day of the month, but instead had changed the date of the month one back instead of changing the day of the month one up, and that the cancellation should have read November 25, 1930, instead of October 24, 1930. The check was introduced in evidence by the defendant in the trial of the case. The check is dated Sayre, Okla., November 23, 1930, and indorsed: "The Beckham County National Bank, Sayre, Oklahoma, Nov. 25, 1930." Indorsed: "Nov. 23, Frank Stewart, Tecumseh, Okla. H. C. Lewis." Perforated through check: "Paid 10—24—30 86—254." This perforated mark appeared on the face of the check, and this check was at all times in the possession of defendant, or one of his witnesses. These contradictory indorsements and cancellations appearing upon the face of the check could have been discovered by the exercise of any reasonable amount of diligence prior to the beginning of the trial. Upon the whole record it cannot be said that defendant exercised due diligence in the discovery of this evidence.

This court has repeatedly held that the granting of a new trial on the ground of newly discovered evidence rests largely in the discretion of the trial court, and that a judgment of conviction will not be reversed on this ground unless there appears to have been a clear abuse of judicial discretion on the part of the trial court in denying a new trial. Howey v. State, 9 Okla. Cr. 453, 132 Pac. 499; Rhoades v. State, 16 Okla. Cr. 446, 184 Pac. 913; Stilwell v. State, 18 Okla. Cr. 10, 192 Pac. 253.

An examination of the whole record discloses that defendant had a fair trial and that the evidence amply supports the verdict of the jury.

The cause is therefore affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.