# BUN RILEY v. STATE.

No. A-8859.   July 12, 1935.
Rehearing Denied July 26, 1935.
(49 Pac. [2d] 813.)

W. L. Lackey and Tom G. Haile, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., and Frank Watson, Asst. Co. Atty., for the State.

EDWARDS, J.   Plaintiff in error, hereinafter called defendant, was convicted of murder in the district court of Pittsburg county and his punishment fixed at death.   In

the latter part of June, 1934, three young men, Hobart Watkins, Homer Beasley, and Bill Gann were shot and killed near the little town of Canadian. The three were killed in the same manner; that is, by a single discharge of a shotgun. In each case the shot took effect in the side or back part of the head, and in each case death was instantaneous. The defendant and these young men had grown up and had gone to school together. All were approximately of the age of 25 years, and were close companions. After Watkins, Beasley and Gann were missing for a day or so, search was instituted and the bodies were found in the timber away from any road. The body of Beasley was first found; he evidently had been killed while sitting down, as the shot ranged downward. The body of Watkins was about 100 yards from that of Beasley. Evidently he had been standing up when killed, as the shot ranged straight through the head. About 200 yards away the body of Bill Gann was found, and from the range of the wound he had evidently been lying down when shot. The physical facts indicated that Beasley and Watkins had been killed probably a day before Gann was killed. Watkins had a .38 caliber pistol in his pocket; the other two were unarmed. Defendant was tried for the murder of Gann, but from the relations of the parties, the statements and confessions and the surrounding circumstances, evidence of the death of the three was admitted in evidence. After the finding of the bodies an information was filed June 30th, charging defendant with the murder of Gann. He was arraigned before a magistrate on July 5th, pleaded not guilty, and a preliminary was set for July 13th. On July 8th, he made a written confession admitting the killing of the three and giving as his reason that he and the three had been mixed up in many crimes, and that they had tried to put the blame on him. He stated the circumstances

of how he took Beasley and Watkins into the woods on Friday and killed them, and that he enticed Gann into the woods on Saturday and killed him. On July 13th, defendant made another confession. In this he stated, in substance, that his part in the killing was forced on him; that two men who lived in Canadian and whose names he refused to give, met him and Watkins near the place where the body of Watkins was found; that they took defendant's gun and they then marched Watkins into the woods and he heard the shot that killed him; that later the two men forced Beasley to go into the woods and he heard the shot that killed him; that defendant met Gann the next morning and sent him into the woods where he was killed; that defendant did not go with him for the reason he feared he would also be killed. On September 22d, defendant made a third confession. In this latter confession defendant stated that one Jones Estes and Joe Wheeler took his gun; that Estes killed Watkins, and Wheeler killed Beasley; and that defendant procured Gann to go to a fixed place where he was killed by Estes and Wheeler; and that under compulsion from Estes and Wheeler defendant wrote a certain card which had been found near the body of Bill Gann, mentioning the killing of Watkins, Beasley, and Gann. While confined in the jail previous to his trial, defendant wrote a note to one Raymond England, a prisoner in the jail, suggesting that England write a note purporting to be from one Baker, admitting that Baker did the killing. He furnished England a form for that purpose. He requested that England then kill Baker, so it would appear Baker had committed suicide. This note was intercepted by the jailer. A part of it reads:

"Say, England, do you remember what we was talking about the other day in regards to Baker. this is a lot to ask of a friend but if you will do this for me it will keep

my ass frome burning and I can do a hole lot for you and will do anything I am bigger nuff to do—you know what I mean dont you its about that note admitting he done everything by his self  Thank it over and let me no Soon Please, Bun.  Say Granite if you will do that for me i will get you out on bond are i will buy you a pair of shoes and put some blades in them and mail them to you and if you want anybody bumped off thats against you i will do that for you i will show you what a friend is.  Baker is going out Monday so you could do it to nite you could get that knife and put it to him and i can fix up a note and we will both be out in a week so let me know so I can fix up that note. * * * Granite, do that for me and i will do anything you want me to do * * * have him to rite his mothers name and address, and you rite that note over just like i rote it because they no my hand riting and rite it just like he rites so we will be in the clear. * * * I mean Will you get rid of Baker for me you can hang him are any way to get rid of him if you Will it will mean a lot to me so let me know and I will fix up a note a clear my self and i will fix you up and get you out some way please let me know what you thank about it. * * *"

This was competent.  Bruner v. United States, 1 Okla. Cr. 205, 96 Pac. 597; Ryal v. State, 16 Okla. Cr. 266, 182 Pac. 253; Dickey v. State, 86 Miss. 525, 38 So. 776.  Defendant did not take the stand, but introduced some evidence tending to prove alibi.

Defendant first argues that the evidence is insufficient to sustain the judgment.  Upon this point the argument is made that the conviction rests on the confessions made by defendant, and the letter written to England, and a card found near the body of Gann that the confessions cannot be true.  There is ample proof of the corpus delicti and of defendant's connection with the killing; there can be no reasonable doubt but that defendant premeditatedly and deliberately killed Gann; that as a part of the same plan

and with the same motive he also killed Watkins and Beasley. The letter written to England, in which he planned and attempted to have brought about the death of Baker in order to shift the crime to him, shows defendant to be a coldblooded, heartless murderer.

Defendant's counsel next argue the court erred in overruling their motion for new trial on the ground of newly discovered evidence. This newly discovered evidence seeks to strengthen the evidence of alibi. This additional evidence has little significance. In the light of the entire record it is clear that evidence, had it been before the jury, would not have affected the verdict. This court has repeatedly held a motion for a new trial on the ground of newly discovered evidence is addressed to the discretion of the trial court and its ruling thereon will not be disturbed except for an abuse of discretion. We are clearly of the opinion there was no abuse of discretion. Howey v. State, 9 Okla. Cr. 453, 132 Pac. 499; Harper v. State, 7 Okla. Cr. 581, 124 Pac. 1116; Hawkins v. State, 11 Okla. Cr. 73, 142 Pac. 1093; Campbell v. State, 37 Okla. Cr. 321, 258 Pac. 357; McKinney v. State, 18 Okla. Cr. 562, 196 Pac. 974; Stilwell v. State, 18 Okla. Cr. 10, 192 Pac. 253.

Next, contention is made that the special prosecutor commented on the failure of the defendant to testify. On this assignment counsel relied on the provisions of section 3068, Okla. St. 1931, and on various decisions of this court. Teer v. State, 10 Okla. Cr. 651, 135 Pac. 1198; Brown v. State, 16 Okla. Cr. 155, 181 Pac. 318; Sturgis v. State, 2 Okla. Cr. 362, 102 Pac. 57. Upon this point it appears that the special prosecutor said in the course of the argument: "Bun Riley knows what he was doing during those two hours; any of you men would know what you were doing."

Thereupon counsel objected and made a record. The special prosecutor then explained to the court in substance that in the attempt to prove the alibi there were two hours of time unaccounted for, and that what he was saying when interrupted was that defendant could have advised his attorneys where he was during those two hours, immediately after they were appointed, and that he did not comment on the failure to testify. The entire argument is not before the court, and it requires a liberal presumption to infer that this argument was that defendant had not testified. We are unable to tell whether or not the preceding argument on the proof of alibi disclosed or attempted to explain the two hours when the whereabouts of defendant was unaccounted for and that this was a legitimate answer to such argument. At another part of the argument counsel said: "The only man who knew anything about Jones Estes was our silent man over here. He didn't tell anybody. He didn't let anybody." Here he was interrupted by an objection which was sustained by the court. This is the only part of the argument set out. No showing was made or attempted before the court to explain the context of this single remark. It does not appear at what stage of the argument it was made, whether in the opening address, at some intermediate stage, or in the closing. We are asked to presume the use of the word "silent" constitutes a comment on defendant's failure to testify. But the evidence is, as above stated, that in defendant's second confession he claimed two men forced him to assist in the homicide, but he refused to name them. Some of the evidence upon this point is:

"Q. Did Bun Riley at the time he made this statement in your presence state whether or not there was anybody else involved in the commission of the crime of killing Bill Gann and Watkins and Beasley? A. He did. * * * Q. Was he asked at that time to state who those men were?

A. He was. Q. Was he asked more than once to state who they were? A. He was asked several times. * * *Q. What did he say in reply to those questions? A. He said if these men didn't tell it themselves it would never be told; that he would give no name whatever. Q. And did he in your presence there make answers to a question concerning how the killing of Watkins and Beasley took place and also how the killing of Gann took place? Did he make answers to those questions in your presence? A. He did. * * * Q. Did he say anything about whose gun they killed the two boys, Beasley and Watkins, with? A. Yes, he did. * * * Q. Whose gun did he say these men were killed with? A. Bun Riley said that it was his own gun that was used. Q. Whose gun did he say was used in killing Bill Gann? A. He said it was his own gun; Bun Riley's gun. Q. Did he state whether or not on Monday morning following the killing if he met the killers whom he would not name in the trial in these woods? A. Yes, he did. * * * Q. And did he in that statement at that time ever name who it was that he had that conversation with? A. Never. Bun Riley never named the man— Q. Did he refuse to name either one of the men that he said helped in the commission of the crime? A. Yes, he refused to. * * *"

In a confession more than two months later, he said these two men were Jones Estes and Joe Wheeler. These confessions were in evidence. Counsel had a right to argue their truth or falsity. To say in the argument in effect that the only man who knew anything about Jones Estes being connected with the killing was this man who remained silent all this time and did not tell any one or let any one know about it, is not a comment on the failure of defendant to testify at the trial, but a comment on the evidence that he kept it a secret all that time. Section 3068, Okla. St. 1931, has been many times construed by this court and similar statutes in other states. It is not to be construed to prevent a fair argument of the testimony and if it is claimed to have been violated, the record

must so show, a presumption will not be sufficient. See in this connection McDaniel v. State, 35 Okla. Cr. 425, 250 Pac. 804; Brannon v. State, 33 Okla. Cr. 206, 243 Pac. 259; Keith v. State, 43 Okla. Cr. 229, 277 Pac. 1037; Murrell v. State, 34 Okla. Cr. 413, 246 Pac. 644; Johns v. State, 55 Okla. Cr. 100, 25 Pac. (2d) 716.

Upon a consideration of the entire record, we find no material error. The case is affirmed.

The original time for the execution having passed, owing to the pendency of this appeal, it is considered, ordered, and adjudged by this court that the judgment and sentence of the district court of Pittsburg county be carried out by electrocution of the defendant on the 20th day of September, 1935.

DAVENPORT, P. J., and DOYLE, J., concur.